Galen B. **GREEN** and Deborah A. Green, individually and as guardians ad litem for the minor children, Andrew Stuart Green and Denise Elizabeth Green, Plaintiffs,

v.

A.B. **HAGGLUND AND SONER**, a foreign corporation; Nordic Tracked Vehicles, Inc., dba Tracks Unlimited, a foreign corporation; and Dyna-Haul, Ltd., a foreign corporation, Defendants.

Civ. No. 84–1360.

United States District Court, D. Idaho.

May 2, 1986.

Craig L. Meadows, Wayne B. Slaughter, Jr., Albert P. Barker, Hawley Troxell Ennis & Hawley, Boise, Idaho, for plaintiffs.

Blaine Evans, Robert J. Koontz, Bruce C. Jones, Evans Keane Koontz Boyd & Ripley, Boise, Idaho, for A.B. Hagglund and Soner.

R.B. Rock, Larry C. Hunter, Moffatt Thomas Barrett & Blanton, Chartered, Boise, Idaho, for Dyna-Haul, Ltd.

Brian K. Julian, Quane Smith Howard & Hull, Boise, Idaho, for Nordic Tracked Vehicles, Inc.

## MEMORANDUM OPINION AND ORDER

RYAN, District Judge.

### I.  INTRODUCTION

This action arises from an accident which occurred during the demonstration of an all-terrain vehicle, Model BV206, manufactured by Defendant A.B. Hagglund and Soner (Hagglund). The accident occurred in August 1983. At the time of the accident, Plaintiff Galen Green was a Bureau of Land Management (BLM) employee and was participating in the demonstration by riding in the BV206. Green was injured when the BV206 was unable to negotiate a steep hill.

On April 23, 1986, the court heard oral argument on the following pending motions:

1.  Defendant Tracks Unlimited's Motion for Summary Judgment.

2.  Defendant Hagglund's Motion for Partial Summary Judgment.

3.  Defendant Hagglund's Motion for Leave to File Cross-claims Against Dyna-Haul, Ltd., and Nordic Tracked Vehicles, Inc.

4.  Defendant Hagglund's Motion to Allow Jury Inspection of the Accident Scene.

### II.  DISCUSSION

#### A.  *Summary Judgment Standards*

Summary Judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. Necessarily, conflicting factual testimony is not properly resolved on a motion for summary judgment. Further, the record must be examined in the light most favorable to, and all inferences from the evidence must be drawn in favor of, the nonmoving parties. *Lew v. Kona Hospital,* 754 F.2d 1420, 1423 (9th Cir.1985).

#### B.  *Defendant Tracks Unlimited's Motion for Summary Judgment*

Tracks Unlimited (Tracks) seeks summary judgment primarily on the grounds that Idaho Code § 6–1407 insulates it from liability.

The liability limitation of Section 6–1407 is not applicable where Tracks (1) has made express warranties; (2) has had a reasonable opportunity to inspect the product in a manner which would or should, in the exercise of reasonable care, reveal the existence of the defective condition complained of, where Tracks had knowledge or reason to know of the defect; or (3) where Tracks altered or modified the BV206. As noted from the bench, the plaintiffs and cross-claimant have submitted deposition testimony and affidavits which, when examined in the light most favorable to the nonmoving parties and drawing all inferences from that evidence in favor of the nonmoving parties, create genuine issues of fact regarding the existence of the prerequisites for and exceptions to Tracks' limitation of liability under Section 6–1407. At this stage of the proceedings, the court cannot hold as a matter of law that the liability limitation of Section 6–1407 is applicable to Tracks Unlimited. Summary judgment is, therefore, inappropriate.

Similarly, the court finds issues of fact exist regarding the plaintiffs' negligence claims against Tracks, as well as the other defendants' claims of indemnity. Summary judgment is, therefore, inappropriate on those claims as well.

#### C.  *Defendant Hagglund's Motion for Partial Summary Judgment*

Defendant Hagglund seeks summary judgment on plaintiffs' warranty claim and claimed loss of parental consortium brought on behalf of Green's children.

Disposition of the motion on both claims requires the resolution of questions of first impression in Idaho. Not only does Hagglund's motion raise issues of first impression in Idaho, the resolution of those issues requires the evaluation of conflicting social policies with little Idaho case law to guide such an evaluation. It is with some reluctance that I undertake the disposition of Hagglund's motion rather than refer the matter to the Idaho Supreme Court for decision. However, neither of the parties have requested certification to the Idaho Supreme Court of the state law issues, discovery is at an end, and trial is set to commence June 9, 1986. In short, the interests of justice in the efficient and cost-effective resolution of judicial disputes require a decision without delay.

1. *Warranty claim.*

Hagglund argues the warranty claim must be dismissed for three reasons: (1) no "warranties" were made to the BLM/Green because no bargain was struck between those parties; (2) Green is not a third-party beneficiary of any warranties given to Tracks or Dyna-Haul; and (3) the BLM/Green is not in privity of contract with Hagglund, and therefore, no warranties could have been extended to the BLM/Green.

(a) *"Basis of the bargain."*

■ Hagglund argues that while it may have made representations to the BLM (and this fact is conceded only for purposes of argument), no agreement was entered into between those parties for the sale of a BV206. Consequently, any representations were not the basis of a bargain as required by Idaho Code § 28–2–313. Hagglund concludes, therefore, that no "warranty" was given.

Although the typical warranty case involves the purchase of the item warranted, this case presents the unusual situation where an intervening accident precludes consummation of any sales agreement that may ultimately have been reached. The parties have not cited any cases which address this situation, nor has the court's independent research revealed either cases or commentary on point. The difficulty presented by this factual situation is readily apparent and best illustrated by a simple example. An individual seeking to purchase a new car engages in discussions with a salesman during which the salesman represents, among other things, that the car can be safely driven at fifty-five miles per hour. The potential buyer likes the particular model and asks the salesman if he can take it for a test drive. During the test drive the car undergoes a catastrophic mechanical failure at fifty miles per hour. The driver is injured as a result of that failure. Does the driver have a cause of action for breach of an express warranty?

Clearly, the potential buyer has not entered into an agreement to purchase the car. Just as clearly, however, the car has failed to perform as represented and the potential buyer has been injured as a result of that failure. The court finds that representations made under these circumstances constitute express warranties. To reach a contrary conclusion would allow a seller to escape liability simply because the accident occurs before the purchase is consummated. In the same situation, the buyer would have a claim for breach of warranty if he had elected to forego a test drive or demonstration, bought the car, and suffered injury as he drove the car off the lot. It is illogical and unjust to penalize a potential buyer for exercising reasonable care in the selection of a vehicle.

This commonsense approach can be supported by a technical contract analysis. First, Section 28–2–313 does not require the existence of a sales agreement. That provision requires only that any affirmation of fact or promise made by the seller become "part of the basis of the bargain." Technically speaking, a bargain has been struck when the potential buyer agrees to test drive the vehicle. The consideration given by the seller to the potential purchaser is the various representations about the vehicle, including its ability to perform in a particular manner. The consideration given by the potential buyer is his agreement to test drive the vehicle and, implicitly

therein, further consider the purchase of the vehicle. Thus, the seller's representations have become part of the basis of a bargain even though it is not the ultimate bargain for the sale of the vehicle.

Admittedly, this may be an overly technical analysis. However, in light of the fact that such an analysis is supported by logic, common sense and fairness, the court will adopt the analysis and hold that representations made by Hagglund, as well as Tracks and Dyna-Haul, to the BLM may constitute express warranties under the circumstances of this case.

■ Finally, Green, as an employee of the BLM, is entitled to the protection of any warranties extended to the BLM by Haggland, Tracks or Dyna-Haul. I reach this conclusion for two alternative reasons. First, Green can be considered the third-party beneficiary of any warranties extended to the BLM under Idaho Code § 28–2–318, and second, as an agent of the corporation, Green is the "person" to whom the warranties were extended.

(i) *Third-party beneficiary under Idaho Code § 28–2–318.*

Although it is not clear from the language and comments to Idaho Code § 28–2–318, to what extent that provision implicitly defines, to the exclusion of all others, those parties which may be third-party beneficiaries of an express warranty, Section 28–2–318 will be read broadly to include employees of a corporate purchaser who would be the intended beneficiaries of any express warranties.

Idaho Code § 28–2–318 provides as third-party beneficiaries of express or implied warranties only those persons in the family or household of the buyer or a guest in the buyer's home. Literally, this would exclude Green as a third-party beneficiary of any warranties made to the BLM. However, where the purchaser is a corporation and the damage is a personal injury, a literal interpretation of Section 28–2–318 would leave no one in a position to sue. After all, a "corporation could hardly have a burned arm or leg." *Delta Oxygen Com-*

*pany, Inc. v. Scott,* 238 Ark. 534, 383 S.W.2d 885, 893 (1964). Common sense dictates that employees of a corporate purchaser to whom the benefits of express warranties could reasonably be expected to run must be allowed to sue upon claims of personal injury resulting from a breach of the warranties. To hold otherwise would immunize manufacturers and distributors from liability for breach of express warranties where the warranties were extended to corporate buyers.

Such a result is consistent with the legislative intent apparent from the language of 28–2–318: that warranties are intended to extend to those who the buyer would have intended to benefit from the warranty. In the context of an individual buyer, that would be those persons in his family or a guest in his home. In the corporate context, that would include employees who would reasonably be expected to use the product. Again, to the extent the extension of express warranties to third-party beneficiaries must be authorized by Idaho Code § 28–2–318, the court will so hold. The supreme courts of Maine and Arkansas have interpreted provisions identical to Section 28–2–318 in the same manner. *McNally v. Nicholson Manufacturing Co.,* 313 A.2d 913 (Me.1973); *Delta Oxygen Company, Inc. v. Scott,* 238 Ark. 534, 383 S.W.2d 885 (1964).

■ If Idaho Code § 28–2–318 does not implicitly prevent the expansion of Idaho common law in the area of horizontal privity, the court simply holds that an employee of a corporate purchaser, who could have reasonably been expected to have benefited from warranties given to that corporate purchaser, can maintain an action against the party making the warranties for claims of personal injuries allegedly resulting from a breach of those warranties.

(ii) *Green as the corporation.*

The primary basis relied upon by this court as well as the Arkansas Supreme Court in *Delta Oxygen* in reaching its conclusion that a corporate employee is a

third-party beneficiary of express warranties extended to the corporation, is also, and perhaps more properly, a basis for a finding that the employee is in effect the corporation for purposes of the benefit of those warranties. In the context of personal injury, warranties can benefit only a natural person. A corporation, of course, is not a natural person. Consequently, it is a fiction to suggest warranties which effectively guarantee against personal injury are extended to the corporate entity. The corporation in that context *is* the employee or employees who would reasonably be expected to use the product and benefit from those warranties.

Therefore, the court finds as an alternative basis for extending the benefits of the warranties to Green, that Green, as an employee of the BLM, is the BLM for purposes of receiving warranties which effectively guarantee against personal injury.

(b) *Green as third-party beneficiary of warranties to Tracks and/or Dyna-Haul.*

■ The plaintiffs argue that Section 28–2–318 should be interpreted broadly to include a "corporate household." The plaintiffs suggest this corporate household would include guests of Tracks and Dyna-Haul, i.e., the BLM, at the demonstration in which the accident occurred.

Although the idea of a "corporate household" is similar to the situation presented by an employee of a corporate buyer, there is a significant distinction. As noted earlier, the employee of a corporate buyer can be considered the corporation for purposes of claims for personal injuries resulting from a breach of warranty. It is unlikely the Idaho Legislature intended to include "corporate households" within the language used to describe beneficiaries of express warranties: "any natural person who is in the family or household of his buyer or who is a guest in his home." This language clearly suggests an individual's family, household and home. The court

finds the language of Idaho Code § 28–2–318 does not encompass a "corporate household."

(c) *Privity.*

■ Defendant Hagglund argues the warranty claims must be dismissed because the BLM/Green is not in privity[1] of contract with Hagglund as required by Idaho law.

The requirement of privity, or lack thereof, has been the subject of discussion by scholars for decades. Although this discussion retains academic vitality, its practical implications have been largely reduced or eliminated by the advent of strict liability in tort. Nonetheless, resolution of the issue is key to disposition of Hagglund's Motion for Summary Judgment on the warranty claims.

Although the Idaho Supreme Court decision in *Salmon Rivers Sportsman Camps, Inc. v. Cessna Aircraft Co.*, 97 Idaho 348, 544 P.2d 306 (1975), is cited by both parties, it is not on point. The Idaho Supreme Court in *Salmon River* expressly stated the exact question presented by this case was not before the court; that is, *Salmon River* did not address the issue of privity requirements in a breach of warranty action sounding in tort. The court stated:

> The instant case consequently is not governed by, nor in turn affects, the law regarding the role of privity in recovery for personal injuries or property damage. Within the category of recovery for economic loss, this case is not an appropriate vehicle for deciding whether a plaintiff must demonstrate privity of contract as a prerequisite to recovery in tort on the grounds of breach of express or implied warranty, negligence, or strict liability.

*Id.* 97 Idaho at 352, 544 P.2d 306 (footnote omitted). The other two Idaho cases cited by the parties suffer from the same deficiency; that is, they involve claims of economic loss and not personal injury. *See*

1. Privity used in this context refers to "vertical privity" as opposed to "horizontal privity." Vertical privity addresses the relationship between purchasers in the chain of distribution, while horizontal privity refers to ultimate users not in the chain of distribution. Idaho Code § 28–2–318 discussed in the preceding section deals with the concept of horizontal privity.

*Adkison Corp. v. American Building Co.,* 107 Idaho 406, 690 P.2d 341 (1984); *State v. Mitchell Construction Co.,* 108 Idaho 335, 699 P.2d 1349 (1984).

However, it appears from Chief Justice Donaldson's concurring opinion and Justices Huntley and Bistline's dissenting opinions in *State v. Mitchell Construction Co.,* that Idaho will soon overrule *Salmon Rivers* and eliminate the privity requirement in cases of purely economic loss. If the Idaho Supreme Court has indicated a willingness to remove privity from the context of economic loss, it can safely be concluded that the court will not require privity in the context of personal injury. I reach this conclusion because, as noted earlier, the requirement of privity in the context of a personal injury action has relatively little impact on the underlying claims, unlike cases for economic loss in which tort theories of negligence and strict liability are not available.

The court finds the BLM/Green need not be in privity of contract with Hagglund, Tracks or Dyna-Haul to maintain an action for breach of warranty.

2. *Children's claim of loss of parental consortium.*

■ The plaintiffs bring suit on behalf of their minor children, Andrew and Denise Green, to recover for loss of their father's love, care, companionship and guidance. Idaho has not heretofore addressed the question of whether or not children have a separate cause of action for loss of parental consortium where a parent is injured by the conduct of another person.

It gives new meaning to the word "understatement" to say that this issue has been the subject of much controversy and commentary by courts, commentators and law students over the past two decades. This court will not attempt to restate in any detail the arguments made in support of and in opposition to recognition of such a cause of action. After reviewing the decisions of three of Idaho's sister states which thoroughly detail the arguments on both sides of this issue, the court finds that the Idaho Supreme Court would not recog-

nize such a cause of action and, therefore, the children's claim for loss of consortium must be dismissed. *See Ueland v. Reynolds Metals Co.,* 103 Wash.2d 131, 691 P.2d 190 (1984) (recognizing cause of action); *Norwest v. Presbyterian Intercommunity Hospital,* 293 Or. 543, 652 P.2d 318 (1982) (rejecting cause of action); and *Borer v. American Airlines, Inc.,* 19 Cal.3d 441, 138 Cal.Rptr. 302, 563 P.2d 858 (1977) (rejecting cause of action).

The court finds that the decision of the Oregon Supreme Court in *Norwest* provides the most comprehensive and persuasive analysis of this issue, and therefore, the court adopts the analysis and conclusion reached therein.

None of the cases reviewed by this court, whether adopting or rejecting the cause of action, have been able to do so on a purely legal analysis. Invariably, the cases discuss and weigh conflicting social policies. It is upon this subject that the court finds that the Oregon Supreme Court's comments in *Norwest* are particularly apropos:

There is another reason not to explain the court's understanding of the existing state of the law by the court's views of desirable social policy. Legislators, unlike judges, may change the law at any time without any demonstration of error, illogic, or incongruity, simply upon changes in personnel and in the political agenda. That is what elections and legislative debates are for. One day's unsuccessful proponents or opponents of a social policy may renew the campaign the next day to change the law. They should be free to debate the merits untrammeled by a court's arguments why its view of the existing law represents the better policy....

We therefore lay aside the pragmatic arguments adduced for and against a child's damage action for the disablement of a parent....

*Norwest v. Presbyterian Intercommunity Hospital,* 652 P.2d at 323–24 (1982). For the reasons set forth by the Oregon Supreme Court in *Norwest,* the court finds the children's claim for loss of parental

consortium fails to state a claim upon which relief can be granted, and therefore, must be dismissed.

### D. *Defendant Hagglund's Motion for Leave to File Cross-Claims*

This motion was unopposed and will be granted.

### E. *Defendant Hagglund's Motion to Allow Jury Inspection of the Accident Scene*

After considering the matter, the court has concluded that the limited probative value of allowing the jury to view the hill upon which the accident occurred would be outweighed by the potential prejudice which might result from an unexplained viewing of a hill. While the jury might very well be better able to appreciate the steepness of the hill as suggested by counsel by Hagglund, the fact of steepness alone may itself be confusing if the jury is unable to visualize the relative location and timing of the events taking place the day of the accident. The court finds the steepness of the hill can be adequately presented in court in a more controlled environment at a time when counsel for all parties can advocate their positions and explain of the location and timing of events taking place during the demonstration.

### III. ORDER

Based upon the foregoing and the court being fully advised in the premises,

IT IS HEREBY ORDERED:

1. That Defendant Tracks Unlimited's Motion for Summary Judgment should be, and is hereby, DENIED.

2. That Defendant Hagglund's Motion for Partial Summary Judgment is GRANTED IN PART and DENIED IN PART. The claims brought on behalf of Green's children for loss of parental consortium are dismissed. Hagglund's Motion for Partial Summary Judgment is denied in all other respects.

3. That Defendant Hagglund's Motion for Leave to File Cross-Claims Against Dyna-Haul, Ltd., and Nordic Tracked Vehicles, Inc., should be, and is hereby, GRANTED. Hagglund shall file its Cross-Complaint within five (5) days of the date of this Order.

4. That Defendant Hagglund's Motion to Allow Jury Inspection of the Accident Scene should be, and is hereby, DENIED.