Kevin JONES, et al., Plaintiffs,

v.

LIFESPRING, INC., et al., Defendants.

Civ. A. No. 87–0067.

United States District Court,
District of Columbia.

Oct. 20, 1988.

Peter N. Georgiades, Washington, D.C., for plaintiffs.

Daniel K. Mayers and Patricia D. Douglass, Wilmer, Cutler & Pickering, Washington, D.C., for defendants.

## MEMORANDUM AND ORDER

BRYANT, Senior District Judge.

This action is before the court on defendants' motion to dismiss the complaint or, in the alternative, for summary judgment in their favor.

The plaintiffs, the three minor children of John and Mary Jones (alias), bring this action by their parents, and by alias, for "psychic injuries" inflicted as a consequence of defendants' actions. Defendants are a corporation organized under the laws of California with a branch office located in Washington, D.C.; John Hanley, the founder, president and Chairman of the Board of Directors of the corporation; and all employees of the corporation who were employed by the corporation at times material to the complaint. For a fee, Lifespring conducts "training" sessions in which participants engage in a variety of psychological group exercises. The sessions span several days and nights during which Lifespring personnel carefully control all aspects of the participant's environment.

Both John and Mary Jones each participated in two training sessions during 1981. The three minor children's contact with defendants came only at "graduation" ceremonies after the completion of each of the training sessions. Complaint at ¶ 20.

Prior to bringing this action, the parents sued Lifespring in August 1984, C.A. No. 82–0881 (*Jones I*). In September 1985, the parties settled their dispute and the action was dismissed with prejudice. Under the

settlement, plaintiffs in *Jones I* (the parents) received monetary compensation in return for which they released all of their future claims arising from their Lifespring trainings. As part of the monetary settlement, plaintiffs were reimbursed for the costs of psychological therapy which their children received.

This second action brought by the Jones family seeks damages on behalf of the three Jones children in three counts. In the first count, the children contend that the defendants negligently deprived them of the "love, warmth, care, nurturement and security and support" of their parents. Complaint at ¶ 71. Count II is an action for intentional infliction of severe emotional distress that is also rooted in the deprivation of parental emotional support. Complaint at ¶¶ 72, 77. The last count is an implied private right of action for the violation of a District of Columbia statute requiring the licensure of psychologists in the District and otherwise overseeing their activities. Complaint at ¶ 78.

*Counts I and II*

■ The law of the District of Columbia is clear; it does not recognize a cause of action of a minor for the deprivation of the emotional support of a parent by a third party. *Pleasant v. Washington Sand & Gravel Co.*, 262 F.2d 471 (D.C.Cir.1958) (infant does not have an enforceable claim against a third party for loss of a parent's support, education, care, society, etc.); *Hill v. Sibley Memorial Hospital*, 108 F.Supp. 739 (D.D.C.1952) (minor child cannot sue for loss of love and companionship as a result of negligent injury to mother). *See Elder v. MacAlpine–Downie*, 180 F.2d 385 (D.C.Cir.1950) (no cause of action lies for an infant against a person who intentionally and wrongfully enticed his father to desert home); *McMillan, et al. v. Taylor*, 160 F.2d 221 (D.C.Cir.1946) (same holding as *Elder*); Annotation, *Child's Right of Action for Loss of Support, Training, Parental Attention, or the Like, Against a Third Person Negligently Injuring Parent*, 11 A.L.R. 4th 549 (1982).

Under a fair reading of the complaint, plaintiffs' injuries are alleged to be the product of the negligent and/or tortious acts by the defendants against a third party, the plaintiffs' parents. Under this theory of the case, applying D.C. law, no recovery can be had.

In their opposition to defendants' motion to dismiss, plaintiffs contend that their injury is the result of the direct contact they had with the defendants. However, in their more than forty page complaint, the only allegation of direct contact made by the plaintiffs is that they were present at their parents' graduation. If plaintiffs assert that their damages are a result of their presence at "graduation" exercises, then absent any additional showing of contact, this event, as a matter of law, is too remote to be the proximate cause of plaintiffs' injuries. Furthermore, defendants' actions toward plaintiffs' parents are wholly irrelevant under this theory of the case.

For these reasons, counts I and II must be dismissed.

*Count III*

The theory of count III is that plaintiffs have a private right of action under the Practice of Psychology Act, Pub.L. No. 91–657, 84 Stat. 1955–1961 (1971) (first codified at § 2–481–102–498 (1971), recodified at § 2–1704.1 to 2–1704.18 in 1981 and repealed by D.C. Law 6–99, § 1104(h), 33 D.C. Reg. 729 (1986)). Since the statute is silent on whether a private party may sue, any claim must be implicit. To determine whether a private remedy is implied in a statute, the court must consider whether: (1) the plaintiffs are among the class for whom the statute was intended to protect; (2) there is any indication of legislative intent to create a private remedy; and (3) creation of a private cause of action would be "consistent with the underlying purpose of the legislative scheme." *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975). No private right of action can be found unless Congress specifically intends to create one. *California v. Sierra Club*, 451 U.S. 287, 293–94, 101 S.Ct. 1775, 1778–80, 68 L.Ed.2d 101 (1981). *See Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 15–16, 100 S.Ct. 242, 245–246, 62 L.Ed.2d 146 (1979) ("what

**428**

must ultimately be determined is whether Congress intended to create the private remedy"). To assess congressional intent, it is necessary to examine the "language and the focus of the statute, its legislative history and its purpose." *Touche Ross & Co. v. Redington,* 442 U.S. 560, 575–76, 99 S.Ct. 2479, 2488–89, 61 L.Ed.2d 82 (1979). Furthermore, it is the plaintiff who carries the burden of demonstrating the affirmative congressional intent to allow for private enforcement of a statute. *Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Curran,* 456 U.S. 353, 378, 102 S.Ct. 1825, 1839, 72 L.Ed.2d 182 (1982); *Samuels v. District of Columbia,* 770 F.2d 184, 194 (D.C.Cir.1985).

A careful reading of the statute and its legislative history raises considerable doubt as to whether Congress intended to protect the class of people of which plaintiffs would be members. Section 5(E) of the Practice of Psychology Act exempts from the licensure requirements "qualified members of other established businesses ... provided that they do not hold themselves out to the public by title or description incorporating the word psychological, psychologist or psychology." 84 Stat. at 1957.

 As the language in the Senate report makes clear, so long as businesses do not represent themselves to be psychologists, they do not need to obtain a license. S.Rep. No. 626, 91st Cong., 1st Sess. 4 (1969). This interpretation is reinforced by examining congressional statements prior to passage. In floor debate, Cong. Adams from Washington declared that the intent of the bill was targeted at people who hold themselves out to be psychologists when in fact they are "quacks". 116 Cong. Rec. 41,380 (1970). In addition and equally dispositive, the duty for enforcing the provisions of the Act was given to the Commissioner of the District of Columbia (later to become the Mayor). 84 Stat. at 1960. Nowhere in the legislative history is there any congressional contemplation of private enforcement.

 Reviewing the complaint and all other materials before the court, there are no allegations that Lifespring or any of the other defendants represented themselves to be psychologists or that they intended to engage in psychology. Thus, reading the statute and the legislative history, there is no indication that Congress intended to extend the benefit of the statute to the class of persons including plaintiffs. Even if plaintiffs' class were covered by the Act, plaintiffs have failed to show that Congress affirmatively created a private right of action as a means to enforce the law. Instead, enforcement responsibilities were given to the executive of the District government. Therefore, count III must also be dismissed because a private right of action under the Practice of Psychology Act does not exist.

In conclusion, the court orders that all counts of the complaint be dismissed for failing to state a claim upon which relief could be granted.