OPINIONS OF THE SUPREME COURT OF OHIO
      The full texts of the opinions of the Supreme Court of
Ohio are being transmitted electronically beginning May 27,
1992, pursuant to a pilot project implemented by Chief Justice
Thomas J. Moyer.
      Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Justine Michael, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.
Your comments on this pilot project are also welcome.
      NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised
to check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.
The advance sheets to Ohio St.3d will also contain the volume
and page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.

      High, a Minor, et al., Appellants, v. Howard et al.,
Appellees.
      [Cite as High v. Howard (1992),     Ohio St.3d    .]
Torts -- Child does not have a cause of action for loss of
      consortium against a third-party tortfeasor who
      negligently or intentionally injures the child's parent.
Under Ohio law, a child does not have a cause of action for
      loss of consortium against a third-party tortfeasor who
      negligently or intentionally injures the child's parent.
      (No. 91-892 -- Submitted February 18, 1992 -- Decided June
24, 1992.)
      Appeal from the Court of Appeals for Allen County, No.
1-90-39.
      On January 9, 1989, Michael E. High was severely injured
in an automobile accident in Hardin County, Ohio.  The driver
of the truck that collided with High's vehicle was Randall C.
Howard, an employee of Cal's Trucking, Inc.
      High is the father of the appellants, Jason and Joshua
High, both minors.  At the time of the accident, Michael High
shared joint custody of the boys with their mother, Sharon
High.  As a result of the accident, Jason and Joshua, through
their mother as next friend, filed suit against Howard and his
employer to recover damages.  In their complaint, the boys
alleged that "[a]s a result of the injuries sustained by
Michael E. High in the crash, *** [they] have lost the
companionship, love, association, moral support, guidance of
their father.  *** [They] have also been deprived of their
expectancy of inheritance.  *** [They] have also suffered
extreme emotional distress as a result of the injuries
inflicted on their father."  When the suit was filed, Michael
High was a patient in a rehabilitation hospital, needing
around-the-clock supervision and care.  Howard and Cal's
Trucking filed a motion to dismiss the appellants' action which
the trial court granted.  The court of appeals affirmed.
      The cause is now before this court pursuant to the
allowance of a motion to certify the record.

      Siferd & Siferd and Richard E. Siferd, for appellants.
      Isaac, Brant, Ledman & Becker, David G. Jennings and J.

Stephen Teetor, for appellees.

Moyer, C.J.    In a recent decision of this court, we noted that it was not yet the propitious time to review the issue of whether a child may maintain a cause of action for loss of parental consortium against a tortfeasor who negligently or intentionally injures the child's parent.  Bowen v. Kil-Kare, Inc. (1992), 63 Ohio St.3d 84, 94, 585 N.E.2d 384, 393.  Now is such time.  Appellants urge us to recognize a cause of action for loss of parental consortium.  We decline to create such a cause of action.

This court has previously refused to recognize a cause of action by a child for loss of parental consortium.  In Kane v. Quigley (1964), 1 Ohio St.2d 1, 30 O.O.2d 1, 203 N.E.2d 338, this court stated that there is no common-law or statutory basis for a child's claim for loss of parental consortium. Kane involved a claim by children that the defendant had induced their father to abandon his family.  The court concluded that "[t]here is no legal right in a child to maintain *** an action for alienation of affections since that cause of action is based upon the right of consortium."  Id. at 3, 30 O.O.2d at 2, 203 N.E.2d at 340.  Kane has generally been followed by Ohio appellate courts.  Masitto v. Robie (1985), 21 Ohio App.3d 170, 21 OBR 181, 486 N.E.2d 1258; Sanders v. Mt. Sinai Hospital (1985), 21 Ohio App.3d 249, 21 OBR 292, 487 N.E.2d 588; Viock v. Stowe-Woodward Co. (Mar. 14, 1986), Erie App. No. E-84-27, unreported; and Kukarola v. Gualtieri (Jan. 18, 1989), Summit App. No. 13637, unreported.  See, also, Gibson v. Johnston (App. 1956), 75 Ohio Law Abs. 413, 144 N.E.2d 310, appeal dismissed (1957), 166 Ohio St. 288, 2 O.O.2d 174, 141 N.E.2d 767.  But, see, Farley v. Progressive Cas. Ins. Co. (Feb. 21, 1992), Lucas App. No. L-90-323, unreported, 1992 WL 32111.

Appellants contend that we should now recognize such a cause of action to eliminate the anomaly in the law that a child whose parent is killed by a tortfeasor is permitted to recover for his or her loss under the wrongful-death statute, whereas a child whose parent is severely injured but is not killed can recover nothing.  Such an argument on its face is persuasive.  However, it does not survive close analysis. Appellants' claim is significantly different from a wrongful-death claim.  A child's claim for loss of companionship, love, association, moral support, and guidance (appellants' claim) rests upon a moral obligation, not an obligation enforceable in law.  As the court in Kane noted: "A child may indeed expect that his parent will have affection for him.  This may be a moral obligation, but no legal obligation exists.  The sole legal obligation imposed upon the parent is that of support."  Kane, supra, 1 Ohio St.2d at 3, 30 O.O.2d at 2, 203 N.E.2d at  339.

Moreover, unlike the case where a child's parent is killed, appellants' father is still living and can assert a claim of his own for his injuries.  If a parent is compensated for loss of earnings and inability to care for his or her children, a child's injury resulting from the parent's duty to support the child will also be remedied.  Where a parent does not survive an accident, the means by which a child can recover

compensation for the loss of a parent's support and services is through a wrongful-death action.

Appellants also urge us to recognize such a cause of action because courts in other states have done so. As noted in Bowen, supra, at 94, 585 N.E.2d at 393, fns. 9 and 10, the highest courts of a number of states have recognized a cause of action for loss of parental consortium against a tortfeasor,[1] while a number have expressly declined to recognize such an action.[2] Numerous legal commentators have supported the recognition of this cause of action.[3] However, we believe the view of a majority of states refusing to recognize such a cause of action in the absence of legislation is the better view and is consistent with the prior decision of this court in Kane.

There are a number of policy reasons for not creating a cause of action in a minor child for loss of consortium of a severely injured parent. The court in Kane, supra, at 3, 30 O.O.2d at 2, 203 N.E.2d at 339, noted the following: "Several reasons have been advanced as justifying the refusal to allow recovery by children, i.e., that this invades the province of the Legislature, that there is a danger of multiplicity of suits, that there is a possibility of fraud, and that it would place the love and affection of the parent on a commercial basis." Other courts have emphasized additional reasons for not recognizing the cause of action. These include the absence of any enforceable claim on the child's part to the parent's services, the absence of precedent, the possible overlap with the parent's recovery, the possibility of upsetting settlements between tortfeasors and parents, the increase of insurance costs, and the public policy expressed in some jurisdictions in the enactment of "heart balm" statutes. Clark v. Suncoast Hosp., Inc. (Fla. App. 1976), 338 So.2d 1117, 1118-1119, citing Note (1956), 54 Mich.L.Rev. 1023, 1024-1025.

Finally, we decline to recognize a new cause of action for loss of parental consortium because we believe the responsibility for changing public policy to permit recovery for loss of parental consortium rests with the General Assembly, not this court. The General Assembly has provided for recovery upon proper proof for the loss of support, services, society, prospective inheritance and mental anguish in a wrongful-death action. R.C. 2125.02(B). Under its constitutional powers, the General Assembly may create a new cause of action for loss of parental consortium in cases where a parent is injured but survives the negligent or intentional conduct of a third-party tortfeasor. There is no better example of an issue that should be determined by the legislative process where arguments in support of and opposed to the proposed remedy may be fully aired and debated.

Appellants also seek recovery for the emotional distress suffered by them as a result of their father's injuries. In the absence of statutory provision therefor, Ohio courts have limited recovery for negligent infliction of emotional distress to such instances as where one was a bystander to an accident or was in fear of physical consequences to his own person. Paugh v. Hanks (1983), 6 Ohio St.3d 72, 6 OBR 114, 451 N.E.2d 759; Criswell v. Brentwood Hosp. (1989), 49 Ohio App.3d 163, 551 N.E.2d 1315. Therefore, because appellants' claim does not arise out of such circumstances, they fail to state a claim for

emotional distress under Ohio law.

For the foregoing reasons, we hold that under Ohio law, a child does not have a cause of action for loss of consortium against a third-party tortfeasor who negligently or intentionally injures the child's parent.

Therefore, the judgment of the court of appeals is affirmed.

Judgment affirmed.

Holmes, Wright and H. Brown, JJ., concur.

Sweeney, Douglas and Resnick, JJ., dissent.

FOOTNOTES:

1    See, e.g., Hibpshman v. Prudhoe Bay Supply, Inc. (Alaska 1987), 734 P.2d 991;  Villareal v. State Dept. of Transp. (1989), 160 Ariz. 474, 774 P.2d 213; Ferriter v. Daniel O'Connell's Sons, Inc. (1980), 381 Mass. 507, 413 N.E.2d 690; Berger v. Weber (1981), 411 Mich. 1, 303 N.W.2d 424; Williams v. Hook (Okla. 1990), 804 P.2d 1131; Reagan v. Vaughn (Tex. 1990), 804 S.W.2d 463; Hay v. Medical Ctr. Hosp. of Vermont (1985), 145 Vt. 533, 496 A.2d 939; Ueland v. Reynolds Metals Co. (1984), 103 Wash. 2d 131, 691 P.2d 190; Belcher v. Goins (1990), 184 W.Va. 395, 400 S.E.2d 830; Theama v. Kenosha (1984), 117 Wis. 2d 508, 344 N.W.2d 513: Nulle v. Gillette-Campbell Cty. Joint Powers Fire Bd. (Wyo. 1990), 797 P.2d 1171.  See, also, Higley v. Kramer (La.App. 1991), 581 So.2d 273, writ denied (1991), 583 So.2d 483; and Pence v. Fox (1991), 248 Mont. 521, 813 P.2d 429.

2    See, e.g., Gray v. Suggs (1987), 292 Ark. 19, 728 S.W.2d 148; Lee v. Colorado Dept. of Health (Colo. 1986), 718 P.2d 221; Zorzos v. Rosen (Fla. 1985), 467 So.2d 305; Dearborn Fabricating & Engineering Corp., Inc. v. Wickham (Ind. 1990), 551 N.E.2d 1135; Schmeck v. Shawnee (1982), 231 Kan. 588, 647 P.2d 1263; Durepo v. Fishman (Me. 1987), 533 A.2d 264; Salin v. Kloempken (Minn. 1982), 322 N.W.2d 736; Russell v. Salem Transp. Co., Inc. (1972), 61 N.J. 502, 295 A.2d 862; Vaughn v. Clarkson (1989), 324 N.C. 108, 376 S.E.2d 236; Morgel v. Winger (N.D. 1980), 290 N.W.2d 266; and Norwest v. Presbyterian Intercommunity Hosp. (1982), 293 Ore. 543, 652 P.2d 318.  See, also, Borer v. American Airlines, Inc. (1977), 19 Cal.3d 441, 138 Cal. Rptr. 302, 563 P.2d 858; Hinde v. Butler (1979), 35 Conn. Supp. 292, 408 A.2d 668; Jones v. Lifespring, Inc. (D.D.C. 1988), 713 F.Supp. 426;  W.J. Bremer Co., Inc. v. Graham (1983), 169 Ga.App. 115, 312 S.E.2d 806, writ denied (1984), 252 Ga. 36, 312 S.E.2d 787; Green v. A.B. Hagglund & Soner (D.Idaho 1986), 634 F.Supp. 790; Van de Veire v. Sears, Roebuck & Co. (1989), 178 Ill.App.3d 794, 127 Ill.Dec. 912, 533 N.E.2d 994; Annis v. Butler Mfg. Co. (D.Kan. 1989), 715 F.Supp. 328; Gaver v. Harrant (1989), 316 Md. 17, 557 A.2d 210; Barbera v. Brod-Dugan Co. (Mo.App. 1989), 770 S.W.2d 318; Hoesing v. Sears, Roebuck & Co. (D.Neb. 1980), 484 F.Supp. 478; DeAngelis v. Lutheran Med. Ctr. (1983), 58 N.Y.2d 1053, 462 N.Y.S.2d 626, 449 N.E.2d 406; Steiner v. Bell Tel. Co. (1986), 358 Pa.Super. 505, 517 A.2d 1348, affirmed (1988), 518 Pa. 57, 540 A.2d 266; Still v. Baptist Hosp., Inc. (Tenn.App. 1988), 755 S.W.2d 807; and Wollam v. Kennecott Corp. (D.Utah 1986), 648 F.Supp. 160.

3    Prosser & Keeton on Torts (5 Ed. 1984) 935-936, Section 125; Comment, What About the Children? Toward an Expansion of Loss of Consortium Recovery in the District of

Columbia (1991), 41 Am.U.L.Rev. 107; Note, Parental Consortium in Florida: Our Children Have No Place to Turn (1988), 13 Nova L.Rev. 295; Lambert, Damages: Loss of Parental Consortium (1987), 30 ATLA L.Rep. 244, 253; Comment, Loss of Parental Consortium: Why Children Should be Compensated (1986), 18 Pac.L.J. 233; Note, The Child's Cause of Action for Loss of Consortium (1977), 5 San Fern.V.L.Rev. 449; Love, Tortious Interference with the Parent-Child Relationship: Loss of an Injured Person's Society and Companionship (1976), 51 Ind.L.J. 590; Note, The Child's Right to Sue for Loss of a Parent's Love, Care, and Companionship Caused by Tortious Injury to the Parent (1976), 56 B.U.L.Rev. 722; Comment, The Child's Claim for Loss of Consortium Damages: A Logical and Sympathetic Appeal (1975), 13 San Diego L.Rev. 231.

Alice Robie Resnick, J., dissenting.  I must respectfully dissent.  A thorough examination of the issues will demonstrate the following:  (1) the majority's holding that Kane v. Quigley (1964), 1 Ohio St.2d 1, 30 O.O.2d 1, 203 N.E.2d 338 controls the disposition of this case is patently erroneous; and (2) that case law from other jurisdictions represents a clear progression in favor of allowing a child to recover for loss of parental consortium.

I

The majority holds that in Kane, supra, this court "refused to recognize a cause of action by a child for loss of parental consortium."  However, on close analysis, Kane does not stand for this proposition; rather, the facts in Kane are markedly different from the facts currently before this court.  In Kane, the court was faced with a situation where minor children, through their mother as next friend, filed a complaint against an "enticer," id. at 4, 30 O.O.2d at 2, 203 N.E.2d at 340, alleging that she had "wrongfully induced their father to abandon his family, and that, as a result thereof, they were deprived of his affections."  Id. at 2, 30 O.O.2d at 1, 203 N.E.2d at 338.  Therefore, Kane involved the refusal to recognize an amatory action, since the cause of action was one for alienation of affections brought on behalf of a father's minor children.  Herein, this court is asked to determine whether a child has a claim for loss of parental consortium against a tortfeasor who causes personal injury to the child's parent.  On its face, Kane is factually distinguishable from the present case.

In addition, because Kane only rejected an alienation of affection claim, its holding is legally distinguishable from, and has no application to, the issues now before this court.  In Berger v. Weber (1978), 82 Mich.App. 199, 267 N.W.2d 124, affirmed (1981), 411 Mich. 1, 303 N.W. 2d 424, the Court of Appeals of Michigan was asked to uphold a claim for loss of parental consortium, even though Michigan had statutorily disallowed such a cause of action in cases of alienation of affections.  Noting the different policy grounds for the two causes of action, the court stated:

"*** First we note that the abolition of this action has not been considered inconsistent with the child's right to recover for the negligent death of a parent under the wrongful death statute ***.  Secondly, the abolition of the alienation of affections action rests on different policy grounds.  As

noted by one law review commentator, when a parent is enticed from the home, the value of the parental love and companionship is open to question. The action is grounded on the theory that an innocent spouse or parent has been maliciously enticed from the home by a seductive intruder. The modern scenario is more likely to disclose a disappointed spouse who is as much the pursuer as the pursued. ***" (Footnote omitted.) Id. at 211, 267 N.W.2d at 129-130.

Hence, there are differing policy grounds for a claim for alienation of affections and a claim for loss of parental consortium in a personal injury action. The former is disallowed because there is a legitimate debate as to the value of the parental love and companionship when a parent leaves the home to pursue an illicit relationship. But this is not necessarily true as to all claims for loss of parental consortium, particularly when it is the negligence of a third-party tortfeasor who separates a parent from the home or otherwise injures the parent-child relationship.

From the above, it can readily be seen that Kane is clearly distinguishable on its facts, on the legal holding, and on the underlying policy grounds. Therefore, Kane does not preclude this court from analyzing whether Ohio should recognize a claim for loss of parental consortium in personal injury cases. Based on the above, the majority's reliance on Kane is misplaced. The majority is correct, however, in noting that several appellate districts in Ohio have refused to recognize a claim for loss of parental consortium, and have cited Kane for this proposition. Yet, the Sixth District Court of Appeals has recently recognized a claim for loss of parental consortium. In Farley v. Progressive Cas. Ins. Co. (Feb. 21, 1992), Lucas App. No. L-90-323, unreported, the court found that Kane was not controlling, and rejected the line of appellate cases that applied Kane to claims for loss of parental consortium as being either summary in nature or outdated. Upon thoroughly tracing the treatment this issue has received in Ohio appellate courts, and disapproving its own prior decision which had cited Kane with approval, the Farley court, with Judge James R. Sherck writing for a unanimous court, cogently stated as follows:

"We decline to follow these appellate court decisions.

"In 1986, this court, in Viock v. Stowe-Woodward Company (Mar. 14, 1986), Erie App. No. E-84-27, unreported, reversed a trial court's award for damages to four minor children on a loss of parental consortium claim in a personal injury case, citing Kane v. Quigley, supra. This court is mindful of the advisability of following the prior holdings of the court. However, the law is not static, but ever evolving and we would prefer to admit our reasoning on an earlier occasion was deficient than to perpetuate error for the sake of mere consistency. We agree with the remarks made by Justice Smith of the Supreme Court of Michigan in Montgomery v. Stephan (1960), 359 Mich. 33, 101 N.W.2d 227, where that court first recognized the loss of consortium claim of a spouse:

"'Were we to rule upon precedent alone, were stability the only reason for our being, we would have no trouble with this case. We would simply tell the woman to begone, and to take her shattered husband with her, that we need no longer be

affronted by a sight so repulsive.  In doing so we would have vast support from the dusty books.  But dust [from] the decision would remain in our mouths through the years ahead, a reproach to law and conscience alike.  Our oath is to do justice, not perpetuate error.'  Id. at 37-38, 101 N.W.2d at 229.

"In retrospect, we believe that our statement in Viock, supra, that a loss of parental consortium claim in an injury case is 'substantially similar' to a loss of parental consortium claim in an alienation of affections case misses the mark.  We now believe the issue before us is more complex and that we erred in dismissing the loss of parental consortium claim in Viock with merely a reference to Kane v. Quigley and no more.  We believe this issue deserves a much greater and more in-depth analysis than it was given in Viock; that analysis follows."  Id. at 7-8.

## II

Since Kane is distinguishable and should not bind this court's analysis, and since there is no controlling authority from this court, other jurisdictions will be consulted for guidance.  As a preliminary matter, it should be noted that a cause of action for loss of parental consortium "was unknown at common law, and prior to 1980 no state had recognized such a cause of action.  Although a majority of states have refused to recognize such a claim, a growing number of jurisdictions, thirteen, have found sound reasons for extending this right to children of injured parents."  (Footnotes omitted.)  Farley, supra, at 9.

The thirteen states that have recognized a claim for loss of parental consortium have done so in the following cases: Hibpshman v. Prudhoe Bay Supply, Inc. (Alaska 1987), 734 P.2d 991; Villareal v. Arizona Dept. of Transp. (1989), 160 Ariz. 474, 774 P.2d 213; Weitl v. Moes (Iowa 1981), 311 N.W.2d 259; Ferriter v. Daniel O'Connell's Sons, Inc. (1980), 381 Mass. 507, 413 N.E.2d 690; Berger v. Weber (1981), 411 Mich. 1, 303 N.W.2d 424; Pence v. Fox (1991), 248 Mont 521, 813 P.2d 429; Williams v. Hook (Okla. 1990), 804 P.2d 1131; Reagan v. Vaughn (Tex. 1990), 804 S.W.2d 463; Hay v. Medical Ctr. Hosp. of Vermont (1985), 145 Vt. 533, 496 A.2d 939; Ueland v. Pengo Hydra-Pull Corp. (1984), 103 Wash.2d 131, 691 P.2d 190; Belcher v. Goins (W.Va. 1990), 400 S.E.2d 830; Theama v. Kenosha (1984), 117 Wis.2d 508, 344 N.W.2d 513; and Nulle v. Gillette-Campbell Cty. Joint Powers Fire Bd. (Wyo. 1990), 797 P.2d 1171.  As of 1990, twenty-seven jurisdictions continued to refuse to recognize this cause of action.  See Reagan v. Vaughn, supra, 804 S.W.2d 463, 477-478, Hecht, J., concurring and dissenting, for a listing of these states.  The unmistakable trend, however, is toward recognition of this type of claim.  Moreover, with regard to assessing the number of jurisdictions which have considered the issue at hand, the wisdom of the Supreme Court of Alaska in Hibpshman v. Prudhoe Bay Supply, Inc. (Alaska 1987), 734 P.2d 991, is particularly instructive:  "[W]e are not 'bound by the mere weight of judicial precedent but rather by the rule which embodies the more persuasive reasoning.'"  Id. at 994, fn. 8, quoting Hebel v. Hebel (Alaska 1967), 435 P.2d 8, 9.

A

The courts which have recognized a claim for loss of parental consortium have delineated several reasons for breaking with the majority view.  Interestingly enough, the United States District Court for the Southern District of Ohio had occasion to address whether this very court would part from the majority of states and recognize a claim for loss of parental consortium.  In Leach v. Newport Yellow Cab, Inc. (S.D. Ohio 1985), 628 F.Supp. 293, the district court answered this question in the affirmative, and held that this court "would recognize the right of a child to recover for loss of parental consortium caused by the negligence of some third person."  Id. at 303.  In reaching this conclusion, the federal court "analyzed the classic reasons advanced by defendants for not recognizing a loss of parental consortium claim and concluded that the Supreme Court of Ohio had rejected the same arguments in different circumstances and was therefore not likely to be persuaded by them in this situation."  Farley, supra, at 8.

The first argument in favor of recognizing this cause of action is that it would be inconsistent to allow a child to recover for loss of parental consortium when a parent is killed, but not when a parent is severely injured.  In other words, because a child may now recover for loss of parental consortium via a wrongful death action, R.C. 2125.02, it would create an anomaly to disallow a claim for loss of parental consortium in cases such as the one at hand, where the parent is seriously injured but not killed.  On this point, the court in Farley, supra, stated the following:

"*** it would be inconsistent to allow recovery in one situation but not in the other since '*** often death is separated from severe injury by mere fortuity.  *** Both may cause a deleterious impact on the quality of consortium.' Villareal, supra, *** at 774 P.2d 218.  It has further been noted that '[s]urely the child's loss of the parent's love, care, companionship, and guidance is nearly the same in both situations.'  Veland, supra, *** at 691 P.2d 192.  One court noted that the injury to the child may even be worse if the parent is injured but does not die.  'Because a child has to deal with the day-to-day realities of the disability of a severely injured parent, the child may suffer more intense and enduring mental anguish and suffering than would be the case if the parent died.' Williams, supra, *** at 804 P.2d 1136.  We agree with these courts and find that since Ohio allows for recovery for loss of parental consortium when a parent dies, it is incongruent not to allow such a recovery when the parent is injured."  Farley, supra, at 9-10.

A common counterargument to this rationale for allowing recovery in these situations is that there is no inconsistency with the wrongful death statutes because an injured parent has his or her own cause of action, and part of their recovery will compensate the children for loss of consortium.  The majority relies on this counterargument in stating that "[i]f a parent is compensated for loss of earnings and inability to care for his or her children, a child's injury resulting from the parent's duty to support the child will also be remedied." What the majority fears is the possibility of double recovery.

Once again, the appellate court in Farley, supra, provides

insightful analysis of this issue:

"*** Appellee in this case alleges that allowing a separate cause of action for the child's loss of parental consortium when the parent does not die will result in double recovery. The common argument is that 'juries already award damages for loss or impairment of parental consortium in a nonfatal injury case as an undisclosed part of the parent's recovery of noneconomic damages.' [Emphasis sic.] Belcher, supra, *** at 400 S.E.2d 838.

"However, many courts have rejected this argument. In Williams v. Hook, supra, *** the Supreme Court of Oklahoma stated:

"'Duplicity of recovery is probably the most touted reason for denying recognition of the cause of action. However, it is also the most easily disposed of once the nature of the cause of action for loss of parental consortium is understood. Pecuniary damages such as lost income which might be used for the benefit of a child or for the cost of substitute child care services are damages recoverable in the parent's action. The entire sum which would have been available as a resource for the parent to provide support and benefits to the child, be they essential or recreational, is recovered by the parent. A cause of action for loss of parental consortium is limited primarily to an award based on the emotional suffering of the child, and recovery is limited to loss of the parent's society and companionship. *** There is no need for the child to recover for economic disadvantages it might suffer due to the parent's injury. That item is recoverable by the parent. A proper jury instruction that the child's damages are separate and distinct from the parent's injury will prevent double recovery on items considered in the parent's award.' Id., at 804 P.2d 1135 (footnotes omitted)." (Footnote omitted.) Farley, supra, at 10-11.

The Supreme Court of West Virginia has even suggested that the possibility of double recovery is a reason for allowing a minor child to recover for loss of parental consortium:

"*** This argument [double recovery], however, actually is support for open recognition of the minor child's action. The double recovery problem is easily eliminated by limiting the injured parent's recovery in this area to the loss or impairment of the parent's pecuniary ability to support the child; similarly, the child's cause of action would be limited to the loss of the parent's society, companionship and the like. *** Rather than having juries make blind calculations of the minor child's loss in determining an award to the parent, the minor child's loss would be argued openly in court and the jury would be instructed to consider the minor child's loss separately.***" (Emphasis sic.) Belcher, supra, 184 W.Va. at 403, 400 S.E.2d 838.

Hence, the better-reasoned and more fundamentally sound approach is to allow the child a separate cause of action, and charge the jury accordingly. This will also ensure that the jury is returning a well-reasoned award, which is fair to both plaintiffs and defendants. Moreover, a separate recovery for the child "guarantees that the award will be utilized for the child's benefit and not by the parent for other purposes." Theama, supra, 117 Wis.2d at 524, 344 N.W.2d at 520-521.

The second rationale in favor of recognizing an action for loss of parental consortium is that since husbands and wives can recover for loss of consortium when a spouse is injured, Clouston v. Remlinger Oldsmobile Cadillac, Inc. (1970), 22 Ohio St. 2d 65, 51 O.O.2d 96, 258 N.E.2d 230, and since a parent can recover for loss of consortium when his or her child is injured, Norvell v. Cuyahoga Cty. Hosp. (1983), 11 Ohio App.3d 70, 11 OBR 120, 463 N.E.2d 111, it is only logical that children should be allowed to recover for similar injuries when a parent is injured. California, like the majority of this court, has rejected this argument. In Borer v. American Airlines, Inc. (1977), 19 Cal.3d 441, 138 Cal.Rptr. 302, 563 P.2d 858, the court reasoned that a spouse's claim for loss of consortium is different from that of a child in that spousal consortium claims are grounded on loss of sexual services while a child's claim for loss of parental consortium is not. This position is invalid for two reasons. First, loss of spousal consortium is not limited to sexual services but rather consists of society, affection and companionship. The loss of sexual services is but one part of a spouse's claim for loss of consortium, and "permitting a husband or wife but not children to recover for loss of consortium erroneously suggests that an adult is more likely to suffer emotional injury than a child." Ueland, supra, at 103 Wash.2d 134, 691 P.2d at 192. In addition, the Supreme Court of Texas has stated that "[t]here is no principled reason to accord the parental-child relationship second class status ***. The obvious and unquestionable significance of the parent-child relationship compels our recognition of a cause of action for loss of parental consortium." Reagan v. Vaughn, supra, 804 S.W.2d at 466.

But more important, the analysis of the Supreme Court of California in Borer, supra, is completely stripped of all credibility when it is realized that a parent can recover for loss of services of a child, where there is no element of loss of sexual services. In Norvell, supra, the Court of Appeals for Cuyahoga County, in an opinion by Judge Richard Markus, held that parents could recover for the loss of the services of a child, and that this included loss of society, services, companionship, comfort, love and solace. Id., 11 Ohio App.3d at 72, 11 OBR at 123, 463 N.E.2d at 114. Therefore, the difference in a spousal consortium action and a child's action for loss of parental consortium, i.e., the lack of sexual relations in the latter, does not warrant the conclusion that a child's consortium action should be disallowed.

The third rationale for recognizing a child's action for loss of parental consortium is that when a parent is injured, the child suffers a real and debilitating loss which deserves compensation. The Supreme Court of Iowa has echoed this concern:

"*** [T]o recognize a right of recovery for a parent's loss of a child's consortium, and not for a child's loss of a parent's consortium, runs counter to the fact that in any disruption of the parent-child relationship, it is probably the child who suffers most.

"'Since the child in his formative years requires emotional nurture to develop properly, the loss of love, care

and companionship is likely to have a more severe effect on him than on an adult; and society has a strong interest in seeing that the child's emotional development proceeds along healthy lines. Moreover, an adult is in a better position than a child to adjust to the loss of a family member's love, care and companionship through his own resources. He is capable of developing new relationships in the hope of replacing some of the emotional warmth of which he has been deprived. A child, however, is relatively powerless to initiate new relationships that might mitigate the effect of his deprivation. Legal redress may be the child's only means of mitigating the effect of his loss.'" Weitl, supra, 311 N.W.2d at 269, quoting Note, The Child's Right to Sue for Loss of Parental Love, Care and Companionship Caused by Tortious Injury to the Parent (1976), 56 B.U.L.Rev. 722, 742.

Despite the acknowledgment of the loss to a child when a parent is injured, arguments are raised that any award may be speculative, or that it would place the love and affection of the parent on a commercial basis. The appellate court in Farley, supra, addressed this point:

"*** Obviously, monetary damages do not truly compensate any physical or psychic injury, but money is the only compensation available in cases where it is impossible to undo the harm that has been done. Therefore, we cannot agree with the Supreme Court of California, which stated:

"'[M]onetary compensation will not enable plaintiffs to regain the companionship and guidance of a mother; it will simply establish a fund so that upon reaching adulthood, when plaintiffs will be less in need of maternal guidance, they will be unusually wealthy men and women. To say that plaintiffs have been "compensated" for their loss is superficial; in reality they have suffered a loss for which they can never be compensated; they have obtained, instead, a future benefit essentially unrelated to that loss.' *** [Borer, supra, 563 P.2d] at 862.

"This seems to be an unnecessarily harsh viewpoint when courts all across the country award money damages on a daily basis to 'compensate' for the loss of a leg, the loss of sexual services of a spouse, or even the loss of privacy." Farley, supra, at 14.

I would reiterate the brutal harshness of the California court's position by noting that when one spouse recovers for loss of consortium, courts uniformly award money damages. How is it that in that circumstance, the spouse who seeks damages for loss of consortium has not also suffered a loss "for which they can never be compensated"? Such a view is nothing short of insensitive, and of tenuous legal significance. Instead, I strongly believe Ohio should join those states which recognize the legitimate and real loss to a child when a parent is injured, and that this loss should be separately compensable by a child's action for loss of parental consortium.

B

The majority points to several policy reasons for rejecting a claim for loss of parental consortium. For example, the majority states that the possibility of fraud is a concern. How is this any less a concern in a spousal consortium action, or any civil cause of action for that

matter?  The problem of double recovery with the injured parent's cause of action has been addressed above; so too has the issue of placing a dollar value on the love and affection of a parent.  On this claim, the Supreme Court of Alaska stated:  "We see no reason to consider the calculation of damages for a child's loss of parental consortium any more speculative or difficult than that necessary in any other consortium, wrongful death, emotional distress, or pain and suffering actions."  Hibpshman, supra, 734 P.2d at 996.  The other reasons listed by the majority for denying a child's claim for loss of parental consortium are likewise without merit.

The only realistic concern expressed by the majority is the problematic area regarding multiple suits.  Yet, the Sixth District Court of Appeals, in Farley, supra, considered this question and reached a very coherent, sensible solution - one that I recommend this court adopt.  That court framed and answered the issue as follows:

"*** R.C. 2305.16 tolls the statute of limitations for minors until they reach the age of majority.  Thus, a minor would potentially have many years after the parent's injury to bring a cause of action for loss of parental consortium.  This would impede settlement of the injured parent's claim and the spouse of the injured parent's loss of consortium claim, since a tortfeasor, or his insurance company, would be most likely to resist settling a portion of the damages arising from one injury without settling all of them.  Further, if a case were not settled, the injured parent and spouse could file their lawsuit within two years from the date of injury and a separate lawsuit could potentially be filed by each child many years later.

"This problem has been dealt with in other jurisdictions by requiring joinder of all minors' consortium claims with the injured parent's claim whenever feasible.  See, e.g., Hibpshman, supra, *** at 734 P.2d 997; Weitl, supra, *** at 311 N.W.2d 268; Ueland, supra, *** at 691 P.2d 194; and Hay, supra, *** at 496 A.2d 943.  We believe that this is a sensible solution to the problem and hold that a child's loss of parental consortium claim must be joined with the injured parent's claim whenever feasible."

C

Lastly, I am compelled to comment on the majority's conclusion to deny a cause of action for loss of parental consortium "because we believe the responsibility for changing public policy to permit recovery *** rests with the General Assembly, not this court."  It is the responsibility of this court to see that justice and fairness are available to all.  A great injustice occurs when a child whose parent is killed by a third-party tortfeasor is permitted to recover for loss of consortium, but a child whose parent is catastrophically injured is precluded from recovering for loss of consortium. Often, in the latter instance, a child suffers more greatly and the loss is more profound.  The child must daily endure the absence of companionship and guidance of the injured parent; at the same time, the child must cope with the reality of the parent's debilitating physical injury.  A child is incapable under these circumstances of ever filling the void that is left

because the parent is physically present, yet unable to fill the role of protector, friend, and teacher. I agree with the wisdom and words of the Supreme Court of Michigan when it stated the following:

"*** [A]ctions by parents for loss of a child's services and medical expenses and actions for loss of spousal consortium were created and developed by the judiciary. At the present time, children are prevented from recovering for loss of parental consortium by judicial decision. The Court should remove the obstacle. We do not regard the cause of action contemplated here so complex that we should defer action to the Legislature." Berger v. Weber (1981), 411 Mich. 1, 17, 303 N.W.2d 424, 427.

Conclusion

I firmly believe that none of the obstacles advanced by the majority prevents this court from recognizing a child's claim for loss of parental consortium. None of these perceived impediments is so great that it cannot be dealt with and overcome. Based on the case law and analysis in the preceding discussion, I would adopt the holding of the appellate court in Farley, supra, and find that a minor child may maintain a cause of action for loss of parental consortium when a parent is injured by a tortfeasor. Loss of parental consortium should be defined as loss of society, affection, comfort, guidance, and counsel. Loss of support is not an element of a claim for loss of parental consortium, since the injured parent may recover for his or her financial losses resulting from his or her physical injuries directly from the tortfeasor. A proper jury instruction will avoid any possibility of a double recovery.

I would also hold that a child's claim for loss of parental consortium is derivative of the underlying claim of the injured parent. Thus, the viability of the claim for loss of parental consortium is wholly dependent upon the viability of the injured parent's personal injury cause of action. This holding should be applied prospectively, and only to the instant case and to any actions arising on or after the date of this decision.

For all of the reasons set forth above, I vigorously dissent.

Sweeney and Douglas, JJ., concur in the foregoing dissenting opinion.