776 P.2d 469

**SHACOCASS, INC., Plaintiff–Appellant,**

**v.**

**ARRINGTON CONSTRUCTION CO., Exxon Nuclear Idaho Co., EG & G Idaho, Inc. and Morrison–Knudsen Co., Inc., Defendants–Respondents.**

**No. 17286.**

Court of Appeals of Idaho.

July 6, 1989.

As Amended July 19, 1989.

John Ohman, Cox & Ohman, Idaho Falls, for plaintiff-appellant.

Louis F. Racine, Jr., Racine, Olson, Nye, Cooper & Budge, Pocatello, for defendant-respondent Arrington Const. Co.

Edward W. Pike, Anderson, Pike & Bush, Idaho Falls, for defendants-respondents Exxon Nuclear Idaho Co., EG & G Idaho, Inc., and Morrison–Knudsen Co., Inc.

BURNETT, Judge.

This appeal arises from a dispute over the technical specifications in a construction subcontract. The subcontractor seeks compensation for additional work allegedly made necessary by ambiguities in the specifications and arbitrary actions by the other contractors on the project. The district court entered summary judgment against the subcontractor. Today we affirm.

The background facts may be summarized briefly. On a site located within the boundaries of the Idaho National Engineering Laboratory (INEL), the United States Department of Energy disposes of nuclear waste. A facility known as the Idaho Chemical Processing Plant reprocesses irradiated uranium fuels, generating several hundred thousand gallons of high level radioactive liquid waste every year. This liquid waste is converted to solid substances and stored in stainless steel bins. The bins are enclosed in partially buried concrete vaults.

In 1979, the Department of Energy arranged for construction of a new set of storage bins on the INEL site. The bin complex was designed to withstand flood, tornado, and earthquake without any release of radioactive material. EG & G Idaho, Inc., designed the project and agreed to serve as the Department's operating contractor for the site during construction. Morrison–Knudsen Co., Inc., was selected as the prime contractor and construction manager for the project. Exxon Nuclear contracted to operate the storage facility upon its completion.

Morrison–Knudsen subcontracted with Arrington Construction Company to perform all cement work required in the construction of the bins. After calling for bids, Arrington executed a lower-tier, fixed price subcontract with Shacocass, Inc., to install reinforcing steel (rebar) that would be embodied in the concrete structures. Shacocass' bid was prepared by Ted McKinley, a major stockholder in Shacocass and the project manager for Shacocass' work on the site.

Construction on the project began in the summer of 1982. While Shacocass was installing the rebar, it became involved in a dispute with the other contractors over a concrete cover specification. Shacocass also contested the manner in which Arrington was building the concrete forms. Inspectors from the various contractors found that Shacocass was not placing the rebar in compliance with the concrete cover specification. Shacocass was directed to re-do much of its rebar work. Shacocass later requested payment for the additional work. Arrington forwarded the request to Morrison–Knudsen, which denied it. Shacocass ultimately was paid the fixed price specified in its subcontract with Arrington.

Shacocass then filed this action for damages. Its verified complaint alleged that the other contractors had violated its subcontract, and had acted arbitrarily, in demanding the extra work without paying for it. The complaint advanced the theories of breach of contract, negligence, defamation and quantum meruit. Upon the other contractors' motion for summary judgment, the district court initially dismissed Shacocass' claim of defamation. Subsequently, on renewed motions for summary judgment, the court dismissed all the remaining claims.

In this appeal we adhere to our familiar standard for reviewing summary judgments. Controverted facts are viewed in favor of the party resisting a motion for summary judgment. Where, as here, a

jury has been requested, the non-moving party also is entitled to the benefit of every reasonable inference that can be drawn from the evidentiary facts. *See Anderson v. Ethington,* 103 Idaho 658, 660, 651 P.2d 923, 925 (1982).

I

With this standard in mind, we turn first to Shacocass' assertion that the other contractors acted in derogation of its subcontract by demanding that the rebar work be re-done. Shacocass contends that the original work complied with the specifications in the subcontract or, alternatively, that the specifications were ambiguous—creating a question of fact for a jury. The district court rejected both contentions. That ruling is subject to free review. Whether a contract is ambiguous is a question of law; and if the contract is not ambiguous, its meaning is also a question of law.[1] *E.g. Clearwater Minerals Corp. v. Presnell,* 111 Idaho 945, 948, 729 P.2d 420, 423 (Ct. App.1986).

The ambiguity question is framed by Shacocass' assertion that the subcontract contained conflicting specifications. The subcontract consisted of several documents. The main document, a purchase order from Arrington to Shacocass, outlined Shacocass' role as a subcontractor on the Morrison–Knudsen project. The purchase order directed the subcontractor's work to be done "in strict accordance with the contract drawings and specifications." It further recited that "[t]he general conditions of the contract specifications and all sections pertaining to bid items are hereby considered to be a part of this purchase order." Thus, Shacocass was bound to comply with the technical specifications and drawings as well as Morrison–Knudsen's general conditions for subcontractors.

Although the dispute over the specifications crystallized while work was in progress, it had its origin during the bidding process. When Ted McKinley of Shacocass was preparing his bid, he noticed that one of the specifications set a very strict standard. Simply stated for ease of discussion, it required two inches of concrete cover over the reinforcing steel and allowed only a quarter-inch tolerance (permitted deviance from the standard). Elsewhere the specifications stated that the tolerance for minimum concrete cover would be as stated in Code 318 of the American Concrete Institute. That code, Shacocass claims, would allow a half-inch tolerance. Before he submitted Shacocass' bid, McKinley spoke to a Morrison–Knudsen representative about the quarter-inch tolerance, stating his belief that it must be an error. The Morrison–Knudsen representative made no statement confirming or denying such a mistake. Shacocass tendered its bid without obtaining a clarification. Subsequently, it installed rebar to the half-inch tolerance until the project inspectors insisted on compliance with the quarter-inch requirement.

Although Shacocass has suggested that the subcontract unambiguously calls for a half-inch tolerance, we deem such an interpretation untenable. The real issue is whether the subcontract was rendered ambiguous by its references to both the quarter-inch and half-inch tolerances. On that issue the subcontract as a whole itself supplies an answer by putting the tolerances in context. The half-inch tolerance is mentioned as part of a general recital that the project shall comply with applicable codes. The quarter-inch tolerance is a specifically mandated requirement. Moreover, the specifications contain a provision that if there is a conflict between a code and a particular specification, the particular specification will control. Accordingly, we hold, as did the district court, that the contract is not ambiguous as to tolerances. Properly construed, the contract unambig-

---

1. In the discussion which follows, we rely upon principles of Idaho law and cite Idaho authorities. In so doing, we are not unmindful of provisions in the "general conditions" of the contract which state that any substantive issue of law which arises from litigation "shall be determined in accordance with the body of law applicable to procurement of goods and services by the federal government." Here, neither of the parties has argued that federal law is materially different in this area from Idaho law.

uously imposes the quarter-inch requirement.

■ Shacocass further asserts that there is another source of ambiguity—where the project drawings conflict with the specifications. Our attention is invited to certain drawings which, it is claimed, require three inches of concrete cover instead of two inches. However, it is not at all self-evident that the drawings call for three inches of cover, as Shacocass maintains. In any event, the drawings are simply appended to Shacocass' brief. We do not see where they were presented to the district court in a manner cognizable by Rule 56, I.R.C.P. They are not mentioned in, or attached to, the verified complaint or affidavits. Neither do the pleadings and affidavits mention any ambiguity allegedly caused by the drawings.[2]

As noted above, Shacocass is entitled to the benefit of every reasonable inference that can be drawn from the evidentiary facts. *Anderson v. Ethington, supra.* However, a court cannot hypothecate facts which are absent from the record cognizable under Rule 56. *Verbillis v. Dependable Appliance Co.,* 107 Idaho 335, 337–38, 689 P.2d 227, 229–30 (Ct.App.1984); *see generally Petricevich v. Salmon River Canal Co.,* 92 Idaho 865, 869, 452 P.2d 362, 366 (1969) (the court can consider only that material contained in affidavits or depositions which is based on personal knowledge and which would be admissible at trial). Upon the facts properly before us, we conclude that Shacocass has failed to show that the subcontract was ambiguous.[3] Accordingly, we need not address a contention by the other contractors that Shacocass assumed the risk of any ambiguity.

## II

We now turn to Shacocass' contention that even if the subcontract called for a quarter-inch tolerance, the other contractors acted arbitrarily in refusing to waive this requirement or to allow additional compensation for re-installing the rebar. This contention is cast variously in the pleadings as a breach of contract, negligence and an asserted right to quantum meruit.

■ We find no breach of contract. Ordinarily, where a contract calls for achieving specific standards, strict compliance with those standards is required. A contractor must perform accordingly. *Gilbert v. City of Caldwell,* 112 Idaho 386, 394, 732 P.2d 355, 363 (Ct.App.1987). A narrow exception exists if the contract requirements are impracticable or are unconscionable because they are the products of a contracting process tainted by one-sidedness, oppression or unfair surprise. *See generally Hershey v. Simpson,* 111 Idaho 491, 494, 725 P.2d 196, 199 (Ct.App.1986).

Shacocass has not established on the record any of the indicia of unconscionability. Shacocass has asserted that the quarter-inch tolerance was unreasonable, basing this contention on a letter written by an independent consulting engineer. Unfortunately, this letter—like the drawings discussed earlier—was not properly submitted under Rule 56, and therefore is not cognizable. In contrast, EG & G and Morrison–Knudsen have submitted affidavits cognizable under the rule, stating that the quarter-inch tolerance was important to the project and was achievable. Indeed, Shacocass' claim for additional compensation implicitly rests upon an assertion that it did, in fact, eventually comply with this requirement. Additionally, the record shows that some modifications of other requirements were made to benefit Shacocass as well as other subcontractors.

**2.** Our comments on the state of the record, here and elsewhere in this opinion, should not be interpreted to reflect on Shacocass' counsel. The law firm presently representing Shacocass entered the case for the first time on appeal.

**3.** The record does contain copies of internal memoranda, from Morrison–Knudsen's files, characterizing the specifications as ambiguous. However, the memoranda refer to a number of contract disputes not at issue here. It is not clear that the characterization of ambiguity was directed specifically at the quarter-inch tolerance. In any event, as we have explained, contract ambiguity is a question of law, to be resolved by a court. The opinion of an engineer or project manager is not dispositive; neither does it alter our analysis in this case.

■ The negligence claim appears to embrace allegations that the quarter-inch tolerance was not feasible and that the other contractors hindered Shacocass' performance. We have already discussed the feasibility question, therefore, our focus is on the allegation of hindered performance. We acknowledge that a contract may create the circumstances for the commission of a tort. *Just's, Inc. v. Arrington Const. Co.,* 99 Idaho 462, 468, 583 P.2d 997, 1003 (1978). However, a tort requires the wrongful invasion of an interest protected by the law, not merely an invasion of an interest created by the agreement of the parties. *Id.* Active negligence or misfeasance is necessary to support an action in tort based on breach of contract. *Steiner Corp. v. American District Telegraph,* 106 Idaho 787, 790, 683 P.2d 435, 438 (1984).

■ Here, the only attempted showing of active negligence or misfeasance is an allegation, based on the independent consulting engineer's letter, that Arrington departed from the usual sequence of rebar and contract forms installation, making compliance with the quarter-inch tolerance more difficult. As we have explained, however, the letter is not a cognizable part of the record under Rule 56. Moreover, the contract was in fact fully performed. Shacocass' only injury was incurring a cost beyond what it had expected to fulfil his contractual obligation. The district court correctly found that this was not sufficient foundation for an action in tort.

■ Finally, we consider the quantum meruit claim. Quantum meruit is a doc-

trine signifying one who provides services should receive the compensation he or she deserves. It is similar to the equitable doctrine of unjust enrichment, although the measures of recovery under the two doctrines are different. Both doctrines allow compensation in the absence of a binding contract. Here, however, there is a valid, enforceable contract for which Shacocass was fully paid the agreed fixed price.

In general, equity will not intervene where an express contract prescribes the right to compensation. *E.g., Wolford v. Tankersley,* 107 Idaho 1062, 1064, 695 P.2d 1201, 1203 (1984). Only where a contract is unlawful, violates public policy or produces unconscionable harm will its provisions be disregarded. *See Quintana v. Anthony,* 109 Idaho 977, 981, 712 P.2d 678, 682 (Ct. App.1985). Shacocass has not established a genuine issue as to how any of these reasons would warrant judicial interference with the contract.[4]

Accordingly, the judgment of the district court is affirmed. Costs (exclusive of attorney fees, which have not been requested) to each of the respondents.

WALTERS, C.J., and SWANSTROM, J., concur.

---

**4.** Appellant's brief mentions in passing a claim arguably outside the contract, involving a "transfer airlift line." However, the brief does not develop the issue, and we will not discuss it here.