868 P.2d 473

**Daryl TUTTLE, Plaintiff–Appellant,**

v.

**SUDENGA INDUSTRIES, INC. an Iowa corporation, Defendant–Respondent,**

and

**Wayment Farms, Inc., an Idaho corporation; Wes's, Inc., an Idaho corporation; Individual John Does and Corporate Does I–V, Defendants.**

**No. 20320.**

Supreme Court of Idaho,
Twin Falls, November 1993 Term.

Jan. 25, 1994.

E. Lee Schlender, Hailey, for appellant.

Hall, Farley, Oberrecht & Blanton, Boise, for respondent. Donald J. Farley argued.

BISTLINE, Justice.

## BACKGROUND AND PRIOR PROCEEDINGS

In 1984, Wes's Welding & Iron Works of Burley, Idaho ("Wes's") installed a U-trough grain auger which was manufactured by Sudenga Industries, Inc., of George, Iowa, ("Sudenga") into a grain storage facility located on Wayment Farms, a dairy farm near Burley. This auger consisted of eight ten-foot sections and was to run the length of the grain bin, with the final sections of the auger being gradually raised from ground level to the point of discharge into Wayment Farms' milling machinery.

The covers for the auger which were provided by Sudenga and installed by Wes's are at the center of this dispute. As sold by Sudenga, these covers were each ten feet in length and of a snap-on design. To attach to the auger in this case, the top ridge (or "peak") of these covers "must be struck very hard." The covers then attach to the auger so firmly that a crowbar or other tool is required to remove them. If the covers are

shortened, removal from the auger is easier, but a tool is still required. Jed Wayment, vice-president of Wayment Farms, Kendall Karlson, vice-president of Wes's, and Daryl Tuttle, the injured employee, each testified that the snap-on covers often are pushed off the auger during normal operation by grain that becomes lodged in the flighting (the rotating component). If the covers were permanently fastened to the auger, Karlson testified that these clogs would cause other problems, such as pushing out various bearings or burning up the auger motor.

Sudenga also sells hoppers and other intake devices to be utilized in loading grain into their augers. The Wayment Farms operation did not purchase a hopper, planning to load grain into the auger by gravity feed.

At some point after installation of the auger, either Wayment Farms or Wes's cut the ten-foot sections of covers into two-foot sections and flattened them, so that the covers merely rested on top of the auger rather than snapping into place. The reason for the alteration was to facilitate Wayment Farms' method of feeding grain directly into the auger by controlling its flow. Wayment Farms also replaced the auger's belt and pulley system, which was provided by Sudenga and on which there was a warning decal, with its own belt and pulley system. It is unclear from the record whether or not the warning provided by Sudenga remained in place after the changes made by Wayment Farms.

On May 9, 1991, Daryl Tuttle ("Tuttle") was operating the auger. Despite Sudenga's warning not to remove the covers, and Wayment Farms' warning not to remove all of the flattened covers at once, Tuttle removed all covers.[1] Without turning the auger off, Tuttle attempted to move a second auger about the grain bin and inadvertently stepped into the first auger, severely injuring both feet.

---

1. Jed Wayment testified that he instructed employees not to remove all of the covers from the auger at the same time. Instead, the employees were to leave the covers in place over the auger, but slide the covers slowly along the auger so as to direct the gravity-loading of grain into the auger. Because the covers were often pushed off the auger by the grain, however, the employees apparently found it easier to simply remove all or at least most of the covers.

Tuttle filed suit on the theories of negligence and strict liability, naming Wayment Farms, Wes's, and Sudenga as defendants. The district court denied Wes's motion for summary judgment on June 26, 1992, because of material issues of fact on whether Wes's altered the auger covers. The district court then granted Sudenga's motion for summary judgment on October 21, 1992, entered a Rule 54 certification to finalize the judgment, and vacated the jury trial that was set to hear the case against the remaining defendants. Tuttle appeals to this Court, arguing that (1) there exist genuine issues of material fact as to whether the grain auger was defective in design and unreasonably dangerous and as to the adequacy of the warning, and (2) his injuries were proximately caused by the alleged defects in the auger and warning, rather than the changes made to the auger covers subsequent to Sudenga's sale of the auger to Wayment Farms.

## ANALYSIS

### I.  Standard of Review

In reviewing the granting of Sudenga's motion for summary judgment, we review the record to ascertain that there is no genuine triable issue of material fact, construing the record most favorably to Tuttle, the party against whom Sudenga's motion was directed. *Corbridge v. Clark Equip. Co.,* 112 Idaho 85, 86, 730 P.2d 1005, 1006 (1986) (citations omitted).

### II.  The Role of the Idaho Products Liability Act

■ Tuttle predicated his product liability action against Sudenga on the theories of strict liability and negligent design, manufacture, and sale of the auger. We note that an action based on strict liability focuses on the condition of the product after manufacturing and the consumer's expectation, and that an action based on negligence is concerned with the conduct and behavior of the manufacturer. *Toner v. Lederle Laboratories,* 112 Idaho 328, 334 n. 5, 732 P.2d 297, 303 n. 5 (1987), *cert. denied,* 485 U.S. 942, 108 S.Ct. 1122, 99 L.Ed.2d 282 (1988) (*quoting David v. Globe Machine Manufacturing Co., Inc.,* 102 Wash.2d 68, 684 P.2d 692, 696 (1984)).

■ The district court granted Sudenga's motion for summary judgment on both negligence and strict liability, ruling as a matter of law that the auger, when it left Sudenga, was not defective. Presuming that strict product liability does not attach if the product is substantially altered because such alteration breaks the chain of causation, the district court ruled that the alteration of the auger covers was substantial and therefore constituted the proximate cause of Tuttle's injury. Because the district court ruled that no defect existed when the auger left Sudenga's control, the court apparently, but not expressly, concluded that Sudenga's motion for summary judgment as to Tuttle's negligence claim should likewise be granted.

We first find that the analysis conducted by the district court and its summary disposition of this case was incorrect in light of our cases which have decided that the Idaho Products Liability Act, I.C. §§ 6–1401 through 6–1410, indicates the legislature's intent to apply principles of comparative negligence not only in the field of negligence law, but also in the field of products liability law, which had previously operated under principles of strict liability. *Salinas v. Vierstra,* 107 Idaho 984, 989 n. 14, 695 P.2d 369, 374 n. 14 (1985). In relying on other jurisdictions and ruling that an alteration of the auger constitutes an absolute defense for Sudenga, the district court failed to apply I.C. § 6–1405(4) in its entirety. The Act defines product alteration and modification as follows:

**I.C. 6–1405.  Conduct affecting comparative responsibility.**

. . . .

(4) Alteration or modification of a product.

(a) "Alteration or modification" occurs when a person or entity other than the product seller changes the design, construction, or formula of the product, or changes or removes warnings or instructions that accompanied or were displayed on the product. "Alteration or modification" of a product includes the failure to observe routine care and maintenance, but does not include ordinary wear and tear.

(b) When a product seller proves, by a preponderance of the evidence, that an alteration or modification of the product by the claimant, or by a party other than the claimant or the product seller has proximately caused the claimant's harm, the claimant's damages shall be subject to reduction or apportionment to the extent that the alteration or modification was a proximate cause of the harm.

This subsection shall not be applicable if:

. . .

3. The alteration or modification was reasonably anticipated conduct, and the product was defective because of the product seller's failure to provide adequate warnings or instructions with respect to the alteration or modification.

■ Furthermore, we have made it clear that this statute must be considered in light of the presumption in Idaho that the language defining product misuse in I.C. § 6–1405(3)(a) creates a jury question, unless the undisputed facts lead to only one reasonable conclusion, in which case the court may rule as a matter of law. *Corbridge v. Clark Equip. Co.*, 112 Idaho at 86–87, 730 P.2d at 1006–07 (finding misuse as a matter of law and affirming summary judgment when a claimant, who failed to fasten the operable seat belt of the forklift in which he rode, was thrown from the forklift as it was towed over rough terrain and through heavy snow). The language in I.C. § 6–1405(4)(a) similarly creates a jury question, unless the court is able to rule as a matter of law that the facts are undisputed and lead to but one reasonable conclusion. Sudenga's argument that our reading of the above sections of the Products Liability Act prevents the application of summary judgment, therefore, is clearly unfounded. *See also* I.C. § 6–1401 ("The previous existing applicable law of this state on product liability is modified only to the extent set forth in this act.").

■ The provision of the Act that is quoted above contemplates that an alteration or modification of a product which proximately causes the claimant's injury shall reduce the claimant's damages. The alteration or modification made by the claimant or by a party other than the claimant or product seller shall not be considered in a comparative negligence analysis, however, if the alteration or modification was reasonably anticipated and if the product was defective for a lack of warnings about alteration of the product. I.C. § 6–1405(4)(b)(3). We find nothing in the district court's opinion to indicate that any of this analysis occurred. Clearly, however, genuine issues of material fact exist as to whether the alteration of the covers was reasonably anticipated. Sudenga emphasizes that Wayment Farms should have purchased a hopper with which to load its grain. The fact that Sudenga did not sell Wayment Farms such an accessory arguably should have alerted Sudenga to the Wayment Farms plan for a different method of loading grain into the hopper. In addition, Tuttle testified that the covers often popped off the auger during normal operation and that they would then become mangled in the flighting. We conclude that reasonable minds could find that facilitating removal of the covers, the alteration complained of here, to better load grain and to forestall the further mangling of the covers was reasonably anticipated conduct.

In addition, the district court conceded that issues of fact exist as to the adequacy of the warning decal. We hold, then, that ruling as a matter of law that the alteration of the auger covers was the sole proximate cause for Tuttle's injury was inappropriate without careful consideration of the remaining language and necessary findings in I.C. § 6–1405.

**III. Genuine issues of fact exist as to whether the auger covers and the warning provided by Sudenga were defective products and whether the defect or the alteration proximately caused Tuttle's injury**

■ To prevail over a defendant's motion for summary judgment, a plaintiff who alleges product liability based on either negligence or strict liability must establish that there are material issues of fact as to (1) injury, (2) whether the injury was proximately caused by a defect, and (3) whether the defect existed at the time the product left the control of the manufacturer. *Corbridge v.*

*Clark Equip. Co.,* 112 Idaho at 87, 730 P.2d at 1007; *Farmer v. International Harvester Co.,* 97 Idaho 742, 746–47, 553 P.2d 1306, 1310–11 (1976). A plaintiff who produces a mere scintilla of evidence, or otherwise raises only a slight doubt as to these facts, will not withstand summary judgment; rather, the plaintiff must respond to the summary judgment motion with specific facts showing there is a genuine issue for trial. I.R.C.P. 56(e); *Corbridge v. Clark Equip. Co.,* 112 Idaho at 87, 730 P.2d at 1007 (citations omitted).

■ Therefore, even if misuse, alteration or modification of the auger covers occurred, such conduct does not necessarily present an absolute bar to Sudenga's liability. To properly grant a manufacturer's motion for summary judgment, the district court still must rule as a matter of law that the product was not defective and that, if defective, such defect nonetheless did not proximately cause the injury. *See Corbridge v. Clark Equip. Co.,* 112 Idaho at 87, 730 P.2d at 1007.

### a. Tuttle presented genuine issues of fact about the defectiveness of the auger covers and the warnings provided by Sudenga

#### (i) The covers

■ In concluding as a matter of law that the covers of the auger were not defective, the district court relied on its interpretation of several regulatory standards, including those issued by the Occupational Safety and Health Administration, the American Society of Agricultural Engineers, and American National Standards Institute. We disagree that these standards conclusively establish that the auger was not defective.

The district court first concluded that the covers met the standards which called for "barriers protecting against inadvertent contact with the moving machinery." Yet since the covers were deliberately designed to come off, and since they came off during normal operation of the auger, they did not necessarily protect against inadvertent contact. The district court also concluded that this auger was not portable and that the standards relating to portable augers, which require either grating or solid covers with holes, were inapplicable to the auger in this case. However, this conclusion ignored the unrefuted testimony of Tuttle which established that the auger at the Wayment farm was moved around on a regular basis and thus was essentially portable. The most critical flaw of the decision below was its disregard for the testimony of Tuttle's expert witness, John Sevart. Sevart testified that the covers on the auger were not safety covers by engineering or safety standards and were thus defective. Clearly, factual issues remain regarding the applicability of regulatory standards to the auger in question and compliance of the auger in this case with those standards. These issues are for the jury; we have ruled that the district court may not weigh controverted facts and evidence in resolving a summary judgment motion. *American Land Title Co. v. Isaak,* 105 Idaho 600, 601, 671 P.2d 1063, 1064 (1983) (citations omitted).

■ In addition, the fact that the snap-on covers, as provided by Sudenga, popped off the auger with relative frequency and when only a "little excess grain" was in the auger weakens Sudenga's argument that these were safety covers. If the covers were intended to protect the operator of the auger, they spontaneously failed to do so. We believe that reasonable minds could therefore find that the auger covers were defective and unreasonably dangerous. *See Westfall v. Caterpillar, Inc.,* 120 Idaho 918, 921, 821 P.2d 973, 976 (1991) (upholding jury finding that brush guard was defective because small tree pierced it).

#### (ii) The warning

■ The district court found that the warning may have been defective, particularly since the only warning was on a decal located on the belt and pulley guard at one end of the 80–foot auger. Sevart testified that the warning was inadequate because it failed to warn users of the possibility of auger entanglement. Other genuine issues of fact concern whether or not the warning remained on the pulley guard at the time of Tuttle's injury and whether or not a warning was also present on the auger itself.

We have held that the adoption of comparative negligence in this state puts the adequacy of the warning before the jury. *Watson v. Navistar International Transp. Corp.*, 121 Idaho 643, 662, 827 P.2d 656, 675 (1992). We reiterate that holding here. It was incorrect for the court below to acknowledge the likely defects of the warnings and yet hold as a matter of law that such warnings could not be the proximate cause of Tuttle's injuries.

### b. Tuttle presented genuine issues of fact about the proximate cause of his injuries

The determination of proximate cause and negligence is normally for the jury. *Watson v. Navistar International Transp. Corp.*, 121 Idaho at 662, 827 P.2d at 675; *Nelson v. Northern Leasing Co.*, 104 Idaho 185, 188, 657 P.2d 482, 485 (1983). But in this case, the district court concluded that removal of the covers proximately caused Tuttle's injury and that the purchase of a hopper would have prevented both the removal and the injury.

We find that the facts here are not susceptible of only one reasonable conclusion. We agree that Tuttle's injury was caused by the absence of covers on the auger. However, it is pure and unfounded speculation to conclude that a hopper would have prevented his injury, since nothing in the record establishes that a hopper would have changed the tendency of the grain to push the covers off the auger or the commonplace removal of the covers during operation.

It is also disputed whether or not Tuttle removed the covers because they had been flattened. Karlson and the Wayments testified that the covers, as they were installed, were difficult to remove and replace and thus were likely to be left off the auger by the employees. Flattened covers, therefore, might tend to remain on the auger more than covers as originally produced by Sudenga. Karlson testified that even the flattened covers may have retained their capacity to grip the edges of the auger. In other words, the factual question of whether or not Tuttle removed the covers because of their altered shape, or whether or not he would have removed them in their original shape, poses a genuine issue that should be presented to a jury.

## CONCLUSION

Because we rule that under the Idaho Products Liability Act, the alteration of a product does not necessarily serve as a complete bar to strict liability or a determination of negligence by the product manufacturer, we conclude that the summary judgment granted by the district court for defendant Sudenga Industries was inappropriately granted in this case. We also conclude that genuine issues of fact remain as to the defectiveness of the warnings and the auger covers and as to whether the alteration of the covers, as compared to the design of the covers as produced by Sudenga, proximately caused Tuttle's injuries.

Accordingly, we vacate the granting of summary judgment for Sudenga Industries and remand to the district court for further proceedings consistent with this opinion. No attorneys' fees. Costs to appellant Tuttle.

McDEVITT, C.J., and JOHNSON, TROUT and SILAK, JJ., concur.