979 P.2d 1174

Royal Von PUCKETT and Carolyn Kay Puckett, husband and wife, Plaintiffs–Appellants,

v.

OAKFABCO, INC., an Illinois corporation, formally known as Kewanee Boiler Corporation, doing business throughout the United States of America and transacting business within the State of Idaho; and Does 1 through 10, inclusive, Defendants–Respondents.

No. 23963.

Supreme Court of Idaho, Boise, December 1998 Term.

June 2, 1999.

Vernon K. Smith, Jr., Boise, for appellants. Vernon K. Smith argued.

Hawley Troxell Ennis & Hawley, LLP, Boise, for respondents. Darrell G. Early argued.

TROUT, Chief Justice.

This is a products liability case. Royal Von Puckett (Puckett) fell off a ladder and was severely injured while cleaning a boiler manufactured by Oakfabco. Seeking compensation for his injuries, Puckett sued Oakfabco. The trial court granted Oakfabco's motion for summary judgment, and Puckett appeals.

## I.

## FACTUAL AND PROCEDURAL HISTORY

Puckett worked seasonally for HJB Mint Oil (HJB). In 1977 HJB purchased a boiler manufactured by Oakfabco, formerly known as Kewanee Boiler. HJB purchased the boiler through Jones Boiler Corporation, an Idaho corporation, for use as a component in its mint distillation process. After continual use, scale or water deposits build up inside the boiler, and to maintain the boiler's efficient operation, HJB had to regularly pressure wash the interior of the boiler. Puckett's duties included cleaning the boiler.

The boiler, as installed in HJB's operation, was eight feet tall in the shape of a long cylinder placed on its side and was installed on a large concrete foundation. The operation manual provided instruction on how to properly clean the boiler's interior. On top of the boiler was an opening called a man-way. To clean the boiler, a person must get to the man-way and use a hose to pressure wash the interior. During the event in question, Puckett propped a ladder against the boiler. He climbed on top of the boiler and proceeded to pressure wash the interior. Upon finishing, Puckett placed the hose on top of the boiler and stepped onto the ladder, placing his left foot on a rung above the point at which the ladder contacted the boiler. Simultaneously, Puckett reached through the rungs of the ladder to pick up the hose. Because the ladder was not secured, the combined effects of the wet concrete floor and Puckett placing his weight on the ladder above the point where it met the boiler caused the ladder to slip and then slide down off the boiler. Puckett's arms and legs were tangled in the ladder's rungs, so he was unable to free himself as he fell. The accident severely injured Puckett leaving him permanently disabled.

Puckett filed a complaint naming Oakfabco as a defendant. In the complaint, Puckett alleges negligent design, negligent failure to warn, strict liability in tort, breach of express and implied warranties, and fraud. Puckett alleges that the boiler manufacturer had a duty to incorporate safety features to prevent this type of accident or, in the alternative, to warn consumers of the inherent danger involved in cleaning the boiler. Both parties moved for summary judgment. After hearing argument, the district court granted Oakfabco's motion and dismissed the case.

The district court found that Oakfabco did not have a duty to incorporate safety features to prevent this type of accident. The court reasoned that this boiler and others like it are component parts of larger operations. Consequently, the party integrating a boiler into a larger system is better able to incorporate safety features such as attached ladders. Applied here, HJB was in a better position to protect its employees. Because HJB purchased the boiler from Jones Boiler Corporation, there was no evidence that Oakfabco knew of HJB's intended use of the boiler. Consequently, the court determined that HJB was better able to incorporate the safety features once the boiler was in place. Moreover, it was "uncontroverted that the placement and location of any ladder which might be incorporated into the boiler would depend upon the final application to which the boiler was placed." Therefore, because Oakfabco had no duty to incorporate safety features which may have prevented this accident, Puckett's claims stemming from the boiler's design fail.

The court also found that Puckett's claim of negligent failure to warn also fails. The risks of standing on a ladder to clean the

boiler are so obvious that Oakfabco did not have a duty to warn its customers of the dangers. Because the statute of limitations had run on Puckett's claims for breach of express and implied warranty, those claims also failed. As for Puckett's claim for fraud, he did not provide any evidence of reliance, a key element. Therefore, viewing all facts in a light most favorable to Puckett, the district court found that there was no genuine issue as to at least one key element of each claim, and Oakfabco was entitled to judgment as a matter of law.

## II.

## STANDARD OF REVIEW

■■■ Our review of a district court's ruling on a motion for summary judgment is the same as that required of the district court when ruling on the motion. *Friel v. Boise City Hous. Auth.*, 126 Idaho 484, 887 P.2d 29 (1994). Pursuant to I.R.C.P. 56(c), summary judgment must be entered when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." I.R.C.P. 56(c). As when the motion is initially considered by the district court, this Court, on review, liberally construes the record in favor of the party opposing the motion and draws all reasonable inferences and conclusions in that party's favor. *Farm Credit Bank of Spokane v. Stevenson*, 125 Idaho 270, 869 P.2d 1365 (1994). If we determine reasonable people could reach different conclusions or draw conflicting inferences from the evidence, we will deny the motion. *Id.* at 272, 869 P.2d at 1367. However, if the evidence reveals no disputed issues of material fact, only a question of law remains, and this Court exercises free review. *Id.*

## III.

## DISCUSSION

Puckett appeals, arguing the district judge improperly granted Oakfabco's motion for summary judgment. Puckett alleged five separate claims, each addressed and dis-missed by the lower court. However, before addressing the merits of Puckett's appeal as to each of those claims, this Court must first address whether we will consider certain documents when evaluating Puckett's arguments.

### A. Record on Appeal

#### *1. Augmented Record*

On January 29, 1998, Puckett moved to augment the record on appeal. Over Oakfabco's objection, this Court granted the motion allowing Puckett to submit a copy of his brief opposing Oakfabco's motion for summary judgment along with its attachments. Those attachments include (1) a transcript from the deposition of Wendall Jones, (2) a portion of the transcript from the deposition of William Quong, (3) a copy of the operation manual for the boiler, and (4) pictures of the boiler as installed at the HJB facility.

■■■ Oakfabco correctly argues that I.R.C.P. 56(e) requires that items offered in support of or opposition to a motion for summary judgment must be attached to the party's affidavit verifying the items' authenticity. *See Shacocass, Inc. v. Arrington Constr. Co.*, 116 Idaho 460, 463, 776 P.2d 469, 472 (Ct.App.1989); *Johnson v. Homedale*, 118 Idaho 285, 796 P.2d 162 (Ct.App.1990). Because Puckett submitted the items mentioned above to the lower court and now to this Court merely as attachments to his memorandum in response, Oakfabco contends they cannot be considered when evaluating Puckett's appeal.

■■■ Oakfabco's argument, while legally correct, is problematic. Oakfabco's counsel submitted copies of the Jones and Quong transcripts, noted above, attached to his own affidavit complying with I.R.C.P. 56(e). Consequently, those transcripts are properly part of the record. However, the index to the transcript from Quong's deposition, as submitted by Oakfabco, indicates that eight photographs of the boiler and a copy of the boiler's operation manual were attached to the deposition transcript as exhibits. As noted, Oakfabco submitted those transcripts attached to an affidavit, signed by counsel, verifying them to be true and correct copies.

The Quong transcript, as submitted by Oakfabco, was not a true and correct copy. It does not include a copy of the operation manual nor the pictures. Rule 59(e) states: "Sworn or certified copies of *all* papers or parts thereof referred to in an affidavit *shall* be attached thereto or served therewith." I.R.C.P. 56(e) (emphasis added). Consequently, Oakfabco is in a strange position to complain that Puckett improperly submitted the operating manual and pictures.

■ Despite Oakfabco's counsel's misrepresentations, the burden remains on the party who wants to have information in the record to make sure that the information is, indeed, properly made part of the record. *See, e.g., Chenoweth v. Sanger,* 123 Idaho 189, 191, 846 P.2d 191, 193 (1993). While Puckett's counsel did attempt to get the manual and pictures before the judge, he failed to do so properly. Nothing in the record verifies that the operating manual or the pictures, as submitted to this Court, are authentic. Although Oakfabco should have included the manual and pictures with Quong's affidavit, Puckett had an opportunity below but failed to properly submit copies of the operation manual and pictures. Therefore, this Court will not consider the manual or pictures on appeal.

### 2. Larry Stauffer's Affidavit and Report

■ Puckett submitted an affidavit and report from an expert, Larry Stauffer, to the lower court the day of the hearing for Oakfabco's motion for summary judgment. In its written decision granting summary judgment, the district court stated:

> The affidavit was untimely for the purpose of this hearing. *See* Rule 56(c), I.R.C.P. In apparent recognition of this fact, counsel for Puckett did not argue that the contents of the Stauffer affidavit provided a basis for resisting Oakfabco's motion for summary judgment.

Puckett's counsel mentions the affidavit and report in his argument often before attempting to raise an argument that the district court abused its discretion in refusing to consider the affidavit. Nonetheless, Puckett has not listed this as an issue on appeal nor has he cited any authority to support his argument that the district court improperly refused to consider the evidence. This Court has held that a party waives an issue on appeal where that party fails to provide authority supporting its argument. *State v. Zichko,* 129 Idaho 259, 263, 923 P.2d 966, 970 (1996) (citing I.A.R. 35). Consequently, we will disregard the Stauffer affidavit.

### 3. Copy of the Boiler Warranty

■ One of Puckett's arguments involves a provision in a written express warranty covering the boiler. However, a copy of the warranty does not appear in the record. Not until after Oakfabco mentioned this deficiency in its brief on appeal did Puckett's counsel attach a copy of the warranty to his reply brief. Because the express warranty is not part of the record, we will not consider it on appeal.

## B. Products Liability

Seeking compensation for his personal injuries, Puckett alleged several causes of action against Oakfabco. Properly categorized, these include negligent design, negligent failure to warn, strict liability in tort, breach of warranty, and fraud. The district court granted Oakfabco's motion for summary judgment on each claim.

### 1. Negligent Design and Strict Liability in Tort

■ To establish a case for negligent design or strict liability, a plaintiff must establish that (1) the product in question was defective, (2) the defect existed at the time the product left the manufacturer's control, and (3) that the defective product was the proximate cause of the plaintiff's injuries. *Corbridge v. Clark Equip. Co.,* 112 Idaho 85, 87, 730 P.2d 1005, 1007 (1986). Moreover, a manufacturer has a duty to design its product "so as to eliminate unreasonable risks of foreseeable injuries." *Zimmerman v. Volkswagen of America, Inc.,* 128 Idaho 851, 854, 920 P.2d 67, 70 (1996). Similarly, a product is defective when it exposes a user or bystander to an unreasonable risk of physical injury. *See Rindlisbaker v. Wilson,* 95 Idaho 752, 758–59, 519 P.2d 421, 427–28 (1974).

Puckett claims that Oakfabco had a duty to provide an attached ladder or other safety device at the time of manufacture and without this safety feature, the boiler was defective. This defect necessarily existed at the time the boiler left Oakfabco's control, and, because cleaning was a necessary step in the boiler's operation, the defect caused Puckett's injuries. There is no dispute that the boiler was manufactured without means to access the man-way or that cleaning is a necessary step in operating the boiler. The dispute lies in whether the boiler as manufactured is defective.

The boiler, in this case, is a component part of the mint still operation designed by HJB. Idaho case law sheds little light on product liability disputes involving component part manufacturers. Finding no relevant Idaho case law, the district court relied on the New Jersey Supreme Court decision, *Zaza v. Marquess & Nell, Inc.*, 144 N.J. 34, 675 A.2d 620 (1996). In *Zaza* an employee for Maxwell House was severely injured while attempting to repair a large "quench" tank. *Id.* at 624. The quench tank was an integral component of a large manufacturing process designed to decaffeinate coffee beans. The court set out a three-part test that several other jurisdictions had used to determine who, in the chain of completing an integrated system, is responsible for incorporating a safety device:

> (1) the trade custom indicating the party that would normally install the safety device; (2) the relative expertise of the parties, looking at which party is best acquainted with the design problems and safety techniques in question; and (3) practicality, focusing on the stage at which installation of the device is most feasible.

*Id.* at 628.

Applying the above factors to the present case, the district court found that the trade custom left the incorporation of safety features, if any, to the party incorporating the boiler. HJB was in the best position to evaluate the safety need of the particular boiler as it was incorporated into its mint still. The court also found that practicality dictates that the safety features could only be installed once the boiler was integrated into HJB's operation. Moreover, "the boiler itself does not present the risk of harm. Rather the risk is a function for the need to access the top of the boiler." The district court then concluded that incorporation of safety devices necessary to reach the man-way was the duty of the mint still fabricator.

Even if this Court were persuaded to adopt the rule in *Zaza*, it applies where the component itself is not defective but, when integrated into the new system, is potentially defective. Here Puckett argues that the cleaning process is required of every boiler. Due to the shape of the boiler, a person cannot access the man-way to clean the boiler without the help of a ladder or another means of access. Puckett argues that the boiler as a separate unit is defective because it does not provide a safe means to reach the man-way. Restated, because the boiler must be cleaned and the boiler, as sold, includes no safe means of doing so, the boiler presents an unreasonable risk of harm to a foreseeable user no matter how or where it is ultimately integrated.

Nonetheless, for Puckett to overcome Oakfabco's motion for summary judgment, Puckett must provide sufficient evidence to create a genuine issue as to whether the boiler's design was defective by exposing users or bystanders to an unreasonable risk of harm.

In support of its motion for summary judgment, Oakfabco submitted an affidavit from Wendall Jones (Jones). Jones, the owner of Jones Boiler Corporation, testified that boilers are component parts ultimately installed in many different settings. Consequently, a boiler manufacturer such as Oakfabco cannot design a generic boiler to include safety features such as an attached ladder since the manufacturer cannot predict how and where a boiler will ultimately be installed. Jones' testimony supports Oakfabco's contention that it could not have reduced the risk with an alternative design. Puckett failed to contradict Jones' testimony.

The only evidence properly found in the record supporting Puckett's claim concerning the boiler's design and safety features is the affidavit of Michael Ferney (Ferney). However, when addressing Oakfabco's motion to

strike Ferney's affidavit, the district court noted: "The affidavit does not establish that Ferney has knowledge, skill, experience, training or education' [sic] relating to the design, manufacture, installation or operation of boilers." While Ferney was not qualified as an expert, the district court found Ferney was able to offer a lay observation and did not strike the entire affidavit.

Ferney is the president of a scrap metal company which is frequently retained to dismantle boilers and has dismantled several Kewanee boilers including models similar to the boiler here. Ferney stated that he has never seen a Kewanee boiler with attached scaffolding, ladders, or other features needed to safely access the man-way. Each time he dismantled a boiler, there was always unrestricted free access to all sides of the boiler. When awarded a contract to dismantle an Oakfabco boiler, Ferney stated: "[W]e automatically transported our own portable scaffolding to the site, as there was never any *safe* means for us access the top of their cylindrically shaped boilers" (emphasis added).

■■■■ As this Court has stated in the past, a products liability plaintiff "who produces a mere scintilla of evidence, or otherwise raises only a slight doubt" about whether a product is defective will not withstand a defendant's motion for summary judgment. *Tuttle v. Sudenga Indus., Inc.*, 125 Idaho 145, 150, 868 P.2d 473, 478 (1994). A plaintiff must, instead, respond with specific facts. *Id.* (citing I.R.C.P. 56(e)). Ferney's lay opinion that there wasn't a safe way to access the boilers was not sufficient to create a genuine issue about whether the boiler exposes users to an unreasonable risk of harm which could be reduced or avoided by adopting a reasonable alternative design. Because Puckett failed to produce specific facts sufficient to establish a genuine issue about whether the boiler was negligently or defectively designed, the trial court properly granted Oakfabco's motion for summary judgment on Puckett's claims for

negligent design and strict liability in tort based upon defective design.

### 2. *Negligent Failure to Warn and Strict Liability in Tort*

Assuming the boiler could be designed in no safer manner, Puckett argues that the boiler was still defective because Oakfabco failed to provide adequate warnings of the dangers involved in cleaning the boiler. While an inadequate warning may render a product defective, the district court found that because the dangers involved in climbing a ladder are so open and obvious, Oakfabco had no obligation to warn potential users.

■■■■ Failure to warn can be a basis for recovery in a products liability action, whether alleged under a theory of strict liability in tort or negligence. *See Watson v. Navistar Int'l Trans., Corp.*, 121 Idaho 643, 660, 827 P.2d 656, 673 (1992). A product is defective if "the defendant 'has reason to anticipate that danger may result from a particular use' of his product and fails to give adequate warnings of such danger." *Rindlisbaker*, 95 Idaho at 759, 519 P.2d at 428 (quoting RESTATEMENT (SECOND) OF TORTS § 402A cmt. h (1977)). This Court has held that I.C. § 6–1405[1] incorporated the doctrine of open and obvious danger "as a component part of the comparative negligence theory." *Watson*, 121 Idaho at 660, 827 P.2d at 673 . Section 6–1405(1)(b) sets out an objective test to determine whether a danger is obvious. While I.C. § 6–1404 states that comparative negligence shall not be a bar to recover personal injuries, its application is limited to instances where the plaintiff's responsibility for his injuries is less than that of the manufacturer.

■■■■ Oakfabco asserts, and Puckett does not dispute, that the danger was open and obvious. As this Court stated in *Cor-*

---

1. Idaho Code 6–1405 provides:

(1) Failure to discover a defective condition.

. . . .

(b) Claimant's failure to observe an obvious defective condition. When the product seller proves by a preponderance of the evi-

dence that the claimant, while using the product, was injured by a defective condition that would have been obvious to an ordinary reasonably prudent person, the claimant's damages shall be subject to reduction.

I.C. § 6–1405.

*bridge*,[2] while a plaintiff's conduct affecting his comparative responsibility is generally a question for the jury, "where the undisputed facts lead to only one reasonable conclusion the court may rule as a matter of law." *Corbridge*, 112 Idaho at 86–87, 730 P.2d at 1006–07; *see also Tuttle v. Sudenga Indus., Inc.*, 125 Idaho 145, 149, 868 P.2d 473, 477 (1994). The question becomes "whether the danger involved is so obvious that it is unreasonable to impose on the manufacturer a duty to warn." *Watson*, 121 Idaho at 660–61, 827 P.2d at 673–74. The district court realized that whether a danger is obvious is generally fact specific. However, the district court found the danger here to be so obvious that, as a matter of law, Oakfabco had no obligation to warn. Rephrased, the risks involved here were so undisputedly obvious, failure to warn of those risks did not render the product defective.

As noted, the question of whether a danger is open and obvious is generally one for the jury. Once the manufacturer proves by a preponderance of the evidence that an alleged defect or danger is obvious, under I.C. §§ 6–1404 and 1405(1)(b), the fact finder reduces the plaintiff's damages according to the plaintiff's own negligence in failing to observe the danger. It is one thing to find that Oakfabco proved by a preponderance that the boiler's defect was obvious. It is quite another to find that the danger involved was so obvious that, as a matter of law, Oakfabco had no duty to warn. Nonetheless, this is such a case. Puckett placed a ladder on a wet concrete floor. He propped that ladder against the rounded surface of the boiler. Without securing the ladder, Puckett stood on the ladder at a point above where the ladder made contact with the boiler. Under these circumstances, the risk that the ladder might slip or that Puckett might otherwise fall was clearly obvious to any reasonable person. Furthermore, the record provides no evidence that Puckett would have accessed the man-way in any other fashion had Oakfabco warned him of the

danger involved in using a ladder, and Puckett fails to suggest what type of warning may have prevented this unfortunate accident.

The purpose of imposing upon a manufacturer the duty to warn is to reduce the risk of injury associated with a product. Where the undisputed facts lead only to the objective conclusion that a particular risk is glaringly obvious, imposing a duty to warn of such a risk serves no function and would be unreasonable. Here, the undisputed facts lead to only one reasonable conclusion—that the dangers involved in Puckett's use of the ladder were so obvious that imposing a duty on Oakfabco to warn, in this case, would serve no function. Therefore, the trial court properly granted Oakfabco's motion for summary judgment on Puckett's claims relating to Oakfabco's failure to warn.

### 3. Breach of Warranty

Puckett failed to produce evidence of an express warranty. Consequently, Puckett's breach of warranty claim is limited to the implied warranty of merchantability. *See* I.C. § 28–2–314. Whatever the nature of the warranty, the district court dismissed Puckett's claim finding it time-barred by the UCC's statute of limitations. Idaho law requires that actions for breach of warranty must be initiated within four years after the goods are delivered. I.C. § 28–2–725(2). Oakfabco delivered the boiler in 1977 and Puckett initiated his claim in 1994. However, Puckett argues that under this Court's holding in *Oats v. Nissan Motor Corp.*, 126 Idaho 162, 879 P.2d 1095 (1994), I.C. § 28–2–725 does not apply to this case. In *Oats*, this Court held:

> that when a plaintiff brings a non-privity breach of warranty action against a manufacturer or seller to recover personal injuries allegedly sustained as a result of a defective product, that action is one for strict liability in tort, governed by the provisions of the IPRLA.

P.2d at 1005. This Court affirmed the trial court's decision granting the defendant's motion for summary judgment. *Id.* at 87, 730 P.2d at 1007. The defendant successfully argued that the forklift was being misused as a matter of law.

2. In *Corbridge*, the plaintiff was injured while steering a forklift manufactured by the defendant. The forklift was being towed across a rough railroad crossing through 18 to 24 inches of new snow. *Corbridge*, 112 Idaho at 85, 730

*Id.* at 172, 879 P.2d at 1105. Under the IPRLA, a plaintiff must initiate his claim within two years after the injury. I.C. §§ 6–1403(3), 5–219(4).

 UCC warranties apply only to those in privity of contract with the manufacturer and those who qualify as third party beneficiaries of the underlying sales contract as defined by I.C. § 28–2–318. *Oats,* 126 Idaho at 169, 879 P.2d at 1102. Here, any warranties made were between Oakfabco and HJB. Therefore, Puckett, as an agent of HJB, is a person to whom the warranties, if any, were extended. *See Green v. A.B. Hagglund & Soner,* 634 F.Supp. 790, 795 (D.Idaho 1986).[3] Consequently, *Oats* is not applicable, and the district court properly granted Oakfabco's motion for summary judgment as to Puckett's warranty claim.

#### 4. Fraud

To state a claim for fraud, Puckett must establish that (1) Oakfabco made a representation, (2) the representation was false, (3) Oakfabco knew it was false or was ignorant of its truth, (4) the representation was material, (5) Oakfabco intended that the representation be acted upon, (6) Puckett was ignorant of the falsity, (7) Puckett reasonably relied on the representation, and (8) causation. *See, e.g., G & M Farms v. Funk Irrigation Co.,* 119 Idaho 514, 518, 808 P.2d 851, 855 (1991). The district court noted that Puckett's claim for fraud involved the statements and depictions in the boiler's operation manual; however, as previously noted, that manual is not part of the record on appeal. Consequently, Puckett has failed to set forth any evidence which would create a genuine issue about whether Oakfabco had made a representation upon which Puckett relied. Therefore, the district court properly granted Oakfabco's motion for summary judgment on Puckett's claim for fraud.

**3.** In *Green,* the court reasoned:

[T]he employee is in effect the corporation for the purpose of the benefit of those warranties. In the context of personal injury, warranties can only benefit a natural person. A corporation, of course, is not a natural person. Consequently, it is a fiction to suggest warranties

### IV.

### CONCLUSION

For the reasons stated above, we affirm the trial court's decision granting Oakfabco's motion for summary judgment on each of Puckett's claims. We award costs to Respondent on appeal.

Justices SCHROEDER, WALTERS and Justices Pro Tem JOHNSON and BURDICK, CONCUR.

which effectively guarantee against personal injury are extended to the corporate entity. The corporation in that context *is* the employee or employees who would reasonably be expected to use the product and benefit from those warranties.

*Green,* 634 F.Supp. at 795.